E-FILED
Friday, 07 June, 2019  03:38:04 PM
Clerk, U.S. District Court, ILCD

**IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION**

| | | |
|---|---|---|
| DANIEL DENEEN, AS INDEPENDENT ADMINSTRATOR OF THE ESTATE OF YINGYING ZHANG, DECEASED, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | No.: 19-cv-2149 |
| THOMAS G. MIEBACH, JENNIFER R. MAUPIN, AND BRENDT A. CHRISTENSEN, | ) ) ) | *Plaintiff demands trial by jury* |
| Defendants. | ) | |

## COMPLAINT AT LAW

Plaintiff, DANIEL DENEEN, AS INDEPENDENT ADMINISTRATOR OF THE ESTATE OF YINGYING ZHANG, DECEASED, by and through his attorneys, CLIFFORD LAW OFFICES, P.C., complaining of the Defendants, THOMAS G. MIEBACH, JENNIFER R. MAUPIN, AND BRENDT A. CHRISTENSEN, states as follows:

## INTRODUCTION

1.      Plaintiff brings this matter to redress the harms caused to Plaintiff's decedent Yingying Zhang by Defendants, Thomas G. Miebach, Jennifer R. Maupin, and Brendt A. Christensen, (collectively referred herein as "Defendants"). Plaintiff brings this matter seeking damages for the various violations of the laws of the United States and State of Illinois arising from Defendants' acts and omissions resulting in harm to Plaintiff's decedent Yingying Zhang.

## JURISDICTION AND VENUE

2.      This case is brought under 42 U.S.C. § 1983 to redress the deprivation under color of law of Plaintiff's rights as secured by the United States Constitution (Counts I-II), and under Illinois common law (Counts III-V).

1

3.      This Court has jurisdiction of the action under 28 U.S.C. §§ 1331 and 1367. Venue is proper under 28 U.S.C. § 1391(b).

4.      On information and belief, all or most of the parties reside in this judicial district, and the events giving rise to the claims herein all occurred within this district.

## PARTIES

5.      Daniel Deneen is the court appointed Independent Administrator of the Estate of Yingying Zhang, Deceased. He is a Public Administrator duly appointed by the governor of the State of Illinois. He is a citizen of the United States and citizen of the State of Illinois.

6.      Defendant Thomas G. Miebach is a citizen of the United States and citizen of the State of Illinois. He is sued in his individual capacity.

7.      At all relevant times herein, Defendant Miebach was employed by the University of Illinois at Urbana-Champaign which is governed by the University of Illinois Board of Trustees of the University of Illinois, a body corporate and politic, and acted under color of law.

8.      Defendant Jennifer R. Maupin is a citizen of the United States and citizen of the State of Illinois. She is sued in her individual capacity.

9.      At all relevant times herein, Defendant Maupin was employed by the University of Illinois at Urbana-Champaign which is governed by the University of Illinois Board of Trustees of the University of Illinois, a body corporate and politic, and acted under color of law.

10.     Defendant Brendt A. Christensen is a citizen of the United States and citizen of the State of Illinois. He is sued in his individual capacity.

11.     At all relevant times herein, Defendant Christensen was employed by the University of Illinois at Urbana-Champaign which is governed by the University of Illinois Board of Trustees of the University of Illinois, a body corporate and politic.

## FACTS COMMON TO ALL COUNTS

12.    At all relevant times herein, the University of Illinois at Urbana-Champaign ("the University") is a public university located in the cities of Champaign and Urbana, Illinois.

13.    In May 2016, Defendant Christensen received his master's degree in physics from the University.

14.    Shortly after earning his master's degree, Defendant Christensen began work as a graduate teacher at the University.

15.    At all relevant times herein, the University of Illinois at Urbana-Champaign Counseling Center ("UICC") is a clinic established by the University to help students and staff with mental health issues.

16.    At all relevant times herein, Thomas G. Miebach and Jennifer R. Maupin were employed as social workers at UICC.

17.    On March 21, 2017, Defendant Christensen sought services at UICC where he reported that he had substance abuse problems with alcohol and prescription drugs and that he was experiencing suicidal and homicidal ideations.

18.    On his intake form at UICC, Defendant Christensen self-reported that he had been abusing alcohol and it was ruining his life; he had been hospitalized for mental health concerns two to three times in the past; he had intentionally injured himself within the past year; he seriously considered attempting suicide two to three times, including within the past month; and he was currently taking medications for depression and sleep issues.

19.    During this visit, Defendant Christensen reported that he was previously treated for depression and sleep issues by a psychiatrist at McKinley Health Center, which is another

clinic run by the University that provides care and treatment for emotional and behavioral difficulties of the students and staff at the University.

20.     On another UICC document, entitled Counseling Center Assessment of Psychological Symptoms ("CCAPS") 62 Profile Report, Defendant Christensen rated close to or at one hundred percent (100%) on scales measuring Depression, Generalized Anxiety, Family Distress, Substance Abuse, and Distress Index.

21.     During this initial assessment, Defendant Christensen demonstrated his symptoms were of the highest levels of severity where he apparently indicated that: he lost touch with reality; felt helpless; felt disconnected from himself; felt isolated and alone; suffered from spells of terror or panic; experienced recurring nightmares or flashbacks; experienced sadness or anger at the thoughts of his family; and wished for improved relations with his family.

22.     Defendant Christensen similarly affirmed the highest severity for his symptoms concerning alcohol abuse.

23.     During this same visit, Defendant Christensen consented to a video recorded interview with an UICC student intern, Carin Molenaar.

24.     During this interview, Defendant Christensen corroborated those symptoms and findings from his written assessment where he discussed his history of substance abuse, depression, sleep issues, marital issues, suicidal ideation, and most significantly, homicidal ideation.

25.     Defendant Christensen also recounted that his wife left him two days earlier and that he did not want to live anymore.

26.     Defendant Christensen further described that he developed an obsession with serial killers.

4

27.     At this time, Defendant Christensen also told UICC staff he had chronically abused his depression medication prescribed by a psychiatrist at the McKinley Health Center.

28.     Ms. Molenaar scheduled Defendant Christensen for follow up care with full-time UICC staff.

29.     On March 30, 2017, Defendant Christensen saw Defendant Maupin, a Master Social Worker at UICC, where Defendant Maupin performed an Alcohol and Other Drugs Assessment.

30.     During this assessment with Defendant Maupin, Defendant Christensen revealed his suicidal ideations and his wife's recent abandonment.

31.     Defendant Christensen told Defendant Maupin that he agreed to continue treatment in order to "continue to evaluate his risk for harm to [himself or] others."

32.     Acknowledging his acute mental problems, Defendant Maupin referred Defendant Christensen to Defendant Miebach, a Licensed Clinical Social Worker at UICC, for additional care that same day.

33.     During his subsequent assessment, Defendant Miebach found that Defendant Christensen had "passive suicidal ideations in response to conflicts inside his marriage."

34.     Forewarning future events, Defendant Christensen revealed that he thought about murder "in an analytical fashion," including killing a person and getting away with it. Defendant Christensen also admitted to having purchased items that could be used in the transport and disposal of a body.

35.     Throughout his visits at UICC, Defendant Christensen relayed specific and plausible threats of harm to others.

36.     Throughout his visits at UICC, Defendant Christensen demonstrated a potential risk of safety to others.

37.     Throughout his visits at UICC, Defendant Christensen identified concrete steps he had taken to harm another person where he admitted to purchasing items to transport and dispose a human body.

38.     Based on the visits at UICC, Defendants Miebach and Maupin knew that Defendant Christensen satisfied the criteria of a high-level threat of harm to others.

39.     Defendants Miebach and Maupin knew that persons with serious mental illness are significantly more dangerous than persons in the general population particularly those who are substance abusers.

40.     Aware of Defendant Christensen's homicidal ideations and that his position as a faculty member at the University created a specific and identifiable threat to students in Defendant Christensen's community at the University, Defendants Miebach and Maupin affirmatively initiated a treatment plan for Defendant Christensen.

41.     In taking these affirmative steps to address Defendant Christensen's homicidal ideations, Defendants Miebach and Maupin acted with deliberate indifference to Defendant Christensen's known risk of harm to others at the University where they allowed Defendant Christensen to remain working as a graduate teacher at the University in good standing effectively encouraging Defendant Christensen to believe that his homicidal ideations did not require immediate and long-term care.

42.     Based on information and belief, through taking these affirmative steps to address Defendant Christensen's homicidal ideations, Defendants Miebach and Maupin, with deliberate indifference to Defendant Christensen's known risk of harm to others at the University,

6

apparently ceased treatment without initiating any emergency or acute treatment options for Defendant Christensen to sufficiently safeguard the students at the University from the foreseeable threat of harm posed by Defendant Christensen, a faculty member.

43.     Defendants Miebach's and Maupin's incomplete treatment plan failed to treat Defendant Christensen's symptoms to necessary resolution.

44.     Accordingly, Defendant Miebach and Maupin inferred to Defendant Christensen that his treatment plan was satisfactorily concluded which encouraged Defendant Christensen's homicidal ideations to become exacerbated and heightened.

45.     Though Defendant Christensen demonstrated unfitness to continue working as a graduate teacher with students, the treatment plan initiated by Defendants Miebach and Maupin did not include any intervention by the University officials, human resources, or law enforcement.

46.     Moreover, despite this foreseeable threat of Defendant Christensen's homicidal potential toward the safety of the University's students, Defendants Miebach and Maupin acted with deliberate indifference and in a manner that shocks the conscience by discharging Defendant Christensen from their care without safely transitioning Defendant Christensen back into the University community or providing adequate safeguards for the students.

### DISSAPPEARANCE OF YINGYING ZHANG

47.     Yingying Zhang ("Zhang") was a visiting international scholar from the Chinese Academy of Sciences in China who conducted research in the field of Photosynthesis and Crop Productivity in the Department of Natural Resources and Environmental Science at the University.

48.     In May 2017, following the completion of the Spring semester, the population at the University declined over seventy percent resulting in limited students and staff on campus at the University. The University's student population remained greatly reduced throughout the two summer sessions from the middle of May through the beginning of August.

49.     On June 9, 2017, at approximately 8:30 a.m., Zhang arrived at the University's Turner Hall located at 1102 S. Goodwin Avenue, Urbana, Illinois to conduct her research.

50.     Between 12:30 p.m. and 1:00 p.m., Zhang left Turner Hall and returned to her apartment for lunch.

51.     At 1:35 p.m., Zhang was observed boarding a Champaign-Urbana Mass Transit District bus at the Orchard Downs South Shelter located at the intersection of Orchard Street and George Huff Drive, Urbana, Illinois.

52.     At 1:39 p.m., Zhang sent a text message to the manager of an apartment complex in Urbana where she intended to sign a lease for an apartment informing the manager that she was running late and expected to meet him at 2:10 p.m.

53.     At 1:52 p.m., Zhang exited the bus at the intersection of Springfield and Mathews, Urbana, Illinois.

54.     At 1:56 p.m., Zhang was observed attempting to waive down a connecting bus; however, this bus did not stop for Zhang.

55.     At 1:57 p.m., Zhang thereafter proceeded north on Goodwin Avenue to Clark Street where she arrived at another bus stop.

56.     The intersection of Goodwin and Clark is approximately one-half (1/2) mile from Defendant Christensen's offices at the Department of Physics at the University and three (3) miles from Defendant Christensen's home address at 2503 W. Springfield, Champaign, Illinois.

57.     At 2:00 p.m., Defendant Christensen's vehicle, a black Saturn Astra, was observed to drive past Zhang and then circle the block returning to Zhang's location.

58.     Three minutes later at 2:03 p.m., Defendant Christensen's vehicle pulled over near Zhang. Zhang then spoke to the driver through the passenger window for about one minute.

59.     At 2:04 p.m., Zhang entered the front passenger seat of the vehicle which proceeded northbound on Goodwin Avenue.

60.     At 2:38 p.m., the apartment manager waiting for Zhang sent her a text message but received no response.

61.     At 9:24 p.m., an associate professor contacted the University Police Department to report Zhang missing and the associate professor and several of Zhang's colleagues told police that they made multiple calls to her phone which went unanswered.

## CRIMINAL INVESTIGATION

62.     Upon learning of Zhang's disappearance, investigators reviewed various surveillance video and identified the Saturn Astra as matching Defendant Christensen's 2008 black Saturn Astra registered to his home at 2503 W. Springfield Avenue, Champaign, Illinois.

63.     On June 12, 2017, law enforcement personnel questioned Defendant Christensen who advised that he could not recall where he was on the afternoon of June 9, 2017, but claimed he was likely sleeping or playing video games at home.

64.     On June 15, 2017, University police and FBI agents executed a search warrant on Defendant Christensen's vehicle and interviewed Defendant Christensen again.

65.     During this subsequent interview, Defendant Christensen admitted that he had been driving around the University campus on June 9, 2017, where he picked up an "Asian female" who appeared distressed and agreed to drive her because she was late for an

appointment. Defendant Christensen further claimed that the woman panicked and fled from the car after he made a wrong turn.

66.     On June 15, 2017, investigators released Defendant Christensen; however, investigators immediately placed him under continuous surveillance.

67.     A forensic search of Christensen's phone revealed he had visited a web forum titled "Abduction 101" in April 2017, which included threads discussing "perfect abduction fantasy" and "planning a kidnapping."

68.     It was later learned that Christensen had posed as a police officer and attempted to lure another woman into his car on June 9th – the same day Zhang went missing.

69.     After his second interview with law enforcement, Defendant Christensen attended a vigil held for Zhang and was overheard discussing what type of person would make his "ideal victim."

70.     On June 29, 2017, law enforcement captured Defendant Christensen on an audio recording explaining how he kidnapped Zhang and took her to his apartment against her will.

71.     On June 30, 2017, FBI agents arrested Defendant Christensen and filed criminal charges against him for the disappearance of Zhang. This criminal matter is pending in this judicial district.

72.     Based on information and belief, law enforcement allegedly found a bloody handprint inside Defendant Christensen's apartment and a cadaver-sniffing dog detected traces of a dead body near the door and sink on his apartment.

73.     Based on information and belief, Zhang is now deceased.

**COUNT I**
**42 U.S.C. § 1983 – DUE PROCESS VIOLATION – WRONGFUL DEATH**
**<u>THOMAS G. MIEBACH AND JENNIFER R. MAUPIN</u>**

74.     Plaintiff realleges and incorporates each of the paragraphs of this Complaint contained in paragraphs 1 through 73 as paragraph 74 as if restated herein.

75.     Plaintiff's decedent Zhang possessed a liberty interest of bodily integrity under the Fourteenth Amendment to be free from bodily harm and death.

76.     Defendants Miebach and Maupin acted under color of law insofar as they were employed by the University which is governed by the University of Illinois Board of Trustees of the University of Illinois, a body corporate and politic.

77.     Defendants Miebach and Maupin knew that Defendant Christensen's homicidal ideations and his position as a faculty member at the University created an identifiable and specific threat of murder or great bodily harm to the students in Defendant Christensen's community at the University, including Zhang.

78.     Defendants Miebach and Maupin created a heightened danger where Defendant Miebach and Maupin affirmatively responded to Defendant Christensen's homicidal ideations and undertook a treatment plan without ensuring that Defendant Christensen's symptoms had resolved despite the known risk of harm to others at the University.

79.     Defendants Miebach and Maupin affirmatively encouraged Defendant Christensen's homicidal ideations where they effectively represented to Defendant Christensen that his symptoms had resolved by ceasing treatment of Defendant Christensen prior to the actual resolution of his symptoms.

80.     Defendants Miebach and Maupin created a heightened danger to the students at the University, including Zhang, by encouraging Defendant Christensen to believe that his homicidal ideations were benign rather than malignant.

81.     Defendants Miebach's and Maupin's response to Defendant Christensen's repeated homicidal threats implied to Defendant Christensen that his actions were permissible, and thus, the acts of Defendants Miebach and Maupin affirmatively increased the risk of violence to the students at the University, including Zhang.

82.     Through their actions, Defendants Miebach and Maupin placed Zhang in a heightened danger that she would not have otherwise faced.

83.     Defendants Miebach and Maupin acted with deliberate indifference to Defendant Christensen's known risk of harm to others at the University where they failed to initiate any emergency or acute treatment options for Defendant Christensen to sufficiently safeguard the students at the University from the foreseeable threat of harm posed by Defendant Christensen despite their knowledge that Defendant Christensen would remain a graduate teacher in good standing.

84.     Despite Defendant Christensen's foreseeable threat, Defendants Miebach and Maupin acted with deliberate indifference and in a manner that shocks the conscience by leading Defendant Christensen to believe that his homicidal ideations did not require continued care.

85.     Despite Defendant Christensen's foreseeable threat, Defendants Miebach and Maupin acted with deliberate indifference and in a manner that shocks the conscience by discharging Defendant Christensen from their care without safely transitioning Defendant Christensen back into the University community or providing adequate safeguards for the students.

86.     Defendants Miebach's and Maupin's repeated and sustained acts toward Defendant Christensen, knowing of Defendant Christensen's potential acts of violence, constituted prior assurances rising to the level of an affirmative condoning of private violence.

87.     Defendants Miebach and Maupin effectively encouraged Defendant Christensen that he will not be arrested, punished, or otherwise interfered with while engaging in misconduct that is likely to endanger the lives of the students at the University, including Zhang.

88.     At all relevant times herein, Zhang was a foreseeable victim and a member of a discrete class of persons that was exposed to the actions of Defendant Christensen.

89.     As a direct and proximate result of the foregoing conduct of Defendants, Plaintiff's decedent Zhang suffered harm and eventual death.

90.     Plaintiff's decedent Zhang left surviving heirs that sustained losses as a result of the death of Zhang, including, but not limited to, loss of companionship, guidance, society, affection, grief, and sorrow.

WHEREFORE, Plaintiff respectfully requests:

a.      Compensatory and punitive damages in an amount to be determined at trial;

b.      An award of reasonable attorneys' fees, costs, and litigation expenses; and

c.      Such other relief as the Court may deem just or equitable.

## COUNT II
## 42 U.S.C. § 1983 – DUE PROCESS VIOLATION – SURVIVAL ACTION
## THOMAS G. MIEBACH AND JENNIFER R. MAUPIN

91.     Plaintiff realleges and incorporates each of the paragraphs of this Complaint contained in paragraphs 1 through 90 as paragraph 91 as if restated herein.

92.     Plaintiff's decedent Zhang possessed a liberty interest of bodily integrity under the Fourteenth Amendment to be free from bodily harm and death.

93.     Defendants Miebach and Maupin acted under color of law insofar as they were employed by the University which is governed by the University of Illinois Board of Trustees of the University of Illinois, a body corporate and politic.

94.     Defendants Miebach and Maupin knew that Defendant Christensen's homicidal ideations and his position as a faculty member at the University created an identifiable and specific threat of murder or great bodily harm to the students in Defendant Christensen's community at the University, including Zhang.

95.     Defendants Miebach and Maupin created a heightened danger where Defendant Miebach and Maupin affirmatively responded to Defendant Christensen's homicidal ideations and undertook a treatment plan without ensuring that Defendant Christensen's symptoms had resolved despite the known risk of harm to others at the University.

96.     Defendants Miebach and Maupin affirmatively encouraged Defendant Christensen's homicidal ideations where they effectively represented to Defendant Christensen that his symptoms had resolved by ceasing treatment of Defendant Christensen prior to the actual resolution of his symptoms.

97.     Defendants Miebach and Maupin created a heightened danger to the students at the University, including Zhang, by encouraging Defendant Christensen to believe that his homicidal ideations were benign rather than malignant.

98.     Defendants Miebach's and Maupin's response to Defendant Christensen's repeated homicidal threats implied to Defendant Christensen that his actions were permissible, and thus, the acts of Defendants Miebach and Maupin affirmatively increased the risk of violence to the students at the University, including Zhang.

99.     Through their actions, Defendants Miebach and Maupin placed Zhang in a heightened danger that she would not have otherwise faced.

100.    Defendants Miebach and Maupin acted with deliberate indifference to Defendant Christensen's known risk of harm to others at the University where they failed to initiate any emergency or acute treatment options for Defendant Christensen to sufficiently safeguard the students at the University from the foreseeable threat of harm posed by Defendant Christensen despite their knowledge that Defendant Christensen would remain a graduate teacher in good standing.

101.    Despite Defendant Christensen's foreseeable threat, Defendants Miebach and Maupin acted with deliberate indifference and in a manner that shocks the conscience by leading Defendant Christensen to believe that his homicidal ideations did not require continued care.

102.    Despite Defendant Christensen's foreseeable threat, Defendants Miebach and Maupin acted with deliberate indifference and in a manner that shocks the conscience by discharging Defendant Christensen from their care without safely transitioning Defendant Christensen back into the University community or providing adequate safeguards for the students.

103.    Defendants Miebach's and Maupin's repeated and sustained acts toward Defendant Christensen, knowing of Defendant Christensen's potential acts of violence, constituted prior assurances rising to the level of an affirmative condoning of private violence.

104.    Defendants Miebach and Maupin effectively encouraged Defendant Christensen that he will not be arrested, punished, or otherwise interfered with while engaging in misconduct that is likely to endanger the lives of the students at the University, including Zhang.

105.     At all relevant times herein, Zhang was a foreseeable victim and a member of a discrete class of persons that was exposed to the actions of Defendant Christensen.

106.     As a direct and proximate result of the foregoing conduct of Defendants, Plaintiff's decedent Zhang suffered harm and eventual death.

107.     As a direct and proximate result of one or more of the aforesaid negligent acts and/or omissions by Defendants, Plaintiff's decedent Zhang sustained injuries of a personal and pecuniary nature, including but not limited to, conscious pain and suffering prior to her death, and had she survived she would have been entitled to bring an action for those injuries she suffered and this action has survived.

WHEREFORE, Plaintiff respectfully requests:

a.     Compensatory and punitive damages in an amount to be determined at trial;

b.     An award of reasonable attorneys' fees, costs, and litigation expenses; and

c.     Such other relief as the Court may deem just or equitable.

### COUNT III
### NEGLIGENCE – WRONGFUL DEATH
### THOMAS G. MIEBACH AND JENNIFER R. MAUPIN

108.     Plaintiff realleges and incorporates each of the paragraphs of this Complaint contained in paragraphs 1 through 107 as paragraph 108 as if restated herein.

109.     Between March 21, 2017 and June 9, 2017, Defendants Miebach and Maupin provided medical care and treatment to Defendant Christensen for his homicidal ideations.

110.     As a result of his homicidal ideations, it was clear to Defendants Miebach and Maupin that Defendant Christensen was unfit to perform his duties and presented a danger to the students at the University.

111.    At all times relevant herein, Defendants Miebach and Maupin had a duty to exercise ordinary care to discourage Defendant Christensen's homicidal ideations.

112.    Because of Defendant Christensen's unresolved homicidal ideations, it was foreseeable that Defendant Christensen would attempt to cause harm to students at the University.

113.    Between March 21, 2017 and June 9, 2017, and at all times relevant herein, Defendants Miebach and Maupin breached said duty.

114.    Between March 21, 2017 and June 9, 2017, and at all times relevant herein, Defendants were negligent in one or more of the following ways:

  a.    Negligently encouraged Defendant Christensen's homicidal ideations; and

  b.    Negligently assured Defendant Christensen that his homicidal ideations did not require immediate and long-term care.

115.    As a direct and proximate result of the aforesaid negligent acts and/or omissions by Defendants, Zhang sustained injuries resulting in her death.

116.    Zhang left surviving heirs that sustained losses as a result of the death of Zhang including, but not limited to, loss of companionship, guidance, society, affection, grief, and sorrow.

WHEREFORE, Plaintiff respectfully requests:

  a.    Compensatory damages in an amount to be determined at trial;

  b.    An award of reasonable attorneys' costs and litigation expenses; and

  c.    Such other relief as the Court may deem just or equitable.

## COUNT IV
## NEGLIGENCE – SURVIVAL ACTION
## THOMAS G. MIEBACH AND JENNIFER R. MAUPIN

117.    Plaintiff realleges and incorporates each of the paragraphs of this Complaint contained in paragraphs 1 through 116 as paragraph 117 as if restated herein.

118.    Between March 21, 2017 and June 9, 2017, Defendants Miebach and Maupin provided medical care and treatment to Defendant Christensen for his homicidal ideations.

119.    As a result of his homicidal ideations, it was clear to Defendants Miebach and Maupin that Defendant Christensen was unfit to perform his duties and presented a danger to the students at the University.

120.    At all times relevant herein, Defendants Miebach and Maupin had a duty to exercise ordinary care to discourage Defendant Christensen's homicidal ideations.

121.    Because of Defendant Christensen's unresolved homicidal ideations, it was foreseeable that Defendant Christensen would attempt to cause harm to students at the University.

122.    Between March 21, 2017 and June 9, 2017, and at all times relevant herein, Defendants Miebach and Maupin breached said duty.

123.    Between March 21, 2017 and June 9, 2017, and at all times relevant herein, Defendants were negligent in one or more of the following ways:

   c.    Negligently encouraged Defendant Christensen's homicidal ideations; and

   d.    Negligently assured Defendant Christensen that his homicidal ideations did not require immediate and long-term care.

124.    As a direct and proximate result of the aforesaid negligent acts and/or omissions by Defendants, Zhang sustained injuries resulting in her death.

125.    As a direct and proximate result of one or more of the aforesaid negligent acts and/or omissions by Defendant, Zhang sustained injuries of a personal and pecuniary nature, including but not limited to, conscious pain and suffering prior to her death, and had she survived she would have been entitled to bring an action for those injuries she suffered and this action has survived her.

WHEREFORE, Plaintiff respectfully requests:

a.    Compensatory damages in an amount to be determined at trial;

b.    An award of reasonable attorneys' costs and litigation expenses; and

c.    Such other relief as the Court may deem just or equitable.

### COUNT V
### BATTERY
### BRENDT A. CHRISTENSEN

126.    Plaintiff realleges and incorporates each of the paragraphs of this Complaint contained in paragraphs 1 through 125 as paragraph 126 as if restated herein.

127.    Defendant Christensen made willful and unauthorized physical contact with Zhang causing bodily harm resulting in her death.

128.    As a direct and proximate result of Defendant Christensen's acts, Zhang sustained injuries resulting in her death.

129.    Zhang left surviving heirs that sustained losses as a result of the death of Zhang including, but not limited to, loss of companionship, guidance, society, affection, grief, and sorrow.

130.    As a direct and proximate result of the acts of Defendant, Zhang sustained injuries of a personal and pecuniary nature, including but not limited to, conscious pain and suffering

prior to her death, and had she survived she would have been entitled to bring an action for those injuries she suffered and this action has survived her.

WHEREFORE, Plaintiff respectfully requests:

      a.      Compensatory and punitive damages in an amount to be determined at trial;

      b.      An award of reasonable costs and litigation expenses; and

      c.      Such other relief as the Court may deem just or equitable.

## **JURY DEMAND**

Plaintiff respectfully demands a trial by jury.

                    Respectfully submitted,

                    /s/ James C. Pullos
                    James C. Pullos

James C. Pullos
CLIFFORD LAW OFFICES, P.C.
120 N. LaSalle St., Suite 3100
Chicago, IL 60602
(312)899-9090
jcp@cliffordlaw.com
*Attorneys for Plaintiff*