# UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
### URBANA DIVISION

| | | |
|---|---|---|
| DANIEL DENEEN, AS INDEPENDENT ADMINISTRATOR OF THE ESTATE OF YINGYING ZHANG, DECEASED, | ) ) ) ) | |
| *Plaintiff*, | ) ) | |
| v. | ) ) | Case No. 2:19-cv-2149-CSB-EIL |
| THOMAS G. MIEBACH, JENNIFER R. MAUPIN, and BRENDT A. CHRISTENSEN, | ) ) ) ) | |
| *Defendants*. | ) ) | |

## DEFENDANTS THOMAS G. MIEBACH AND JENNIFER R. MAUPIN'S
## MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS

Dated: August 19, 2019

GREENBERG TRAURIG, LLP

Gregory E. Ostfeld
John F. Gibbons
Tiffany S. Fordyce
Thomas J. Sotos
Scott Dorsett
77 W. Wacker Drive, Suite 3100
Chicago, IL 60601
Tel: (312) 456-8400

*Attorneys for Defendants Thomas G. Miebach and Jennifer R. Maupin*

## **TABLE OF CONTENTS**

INTRODUCTION ....................................................................................................... 1

THE ESTATE'S ALLEGATIONS ............................................................................. 2

LEGAL STANDARD ................................................................................................. 4

ARGUMENT .............................................................................................................. 5

   I. The Estate's Federal Causes of Action (Counts I & II) Fail to State a Plausible Claim for Relief Under 42 U.S.C. § 1983 ..................................................................... 5

      A. The Estate Fails to Allege Plausible Affirmative Acts Creating or Increasing a Danger to Ms. Zhang ............................................................................................. 6

      B. The Estate's Allegations Do Not Plausibly Allege Proximate Cause ........................... 8

      C. The Estate Does Not Allege Conscience-Shocking Conduct ....................................... 11

   II. Counts I and II Should Be Dismissed Based on Qualified Immunity ............................ 12

   III. The Estate Does Not Plead a Plausible Negligence Theory (Counts III & IV) ............... 13

      A. The Estate Does Not Allege an Actionable Duty of Care ............................................ 14

      B. The Estate Does Not Allege Proximate Cause ............................................................ 16

      C. The Complaint Relies on a Document Refuting Its Own Allegations .......................... 17

      D. The Estate Did Not File the Affidavit Required to Plead its Healing Art Malpractice Claims ....................................................................................................... 18

      E. Counts III & IV Should be Dismissed for Lack of Supplemental Jurisdiction ........... 20

CONCLUSION ......................................................................................................... 20

## TABLE OF AUTHORITIES

**Cases**

*Abraham v. Wayside Cross Rescue Mission*,
289 Ill.App.3d 1048, 682 N.E.2d 1240 (2d Dist. 1997) .............................................. 16

*Allin v. City of Springfield*, 845 F.3d 858 (7th Cir. 2016) ........................................... 12

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ...................................................................... 4-5

*Barnett v. Daley*, 32 F.3d 1196 (7th Cir. 1994) ......................................................... 10

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ................................................... 4

*Bernier v. Burris*, 113 Ill.2d 219, 497 N.E.2d 763 (Ill. 1986) ...................................... 19

*Bowers v. DeVito*, 686 F.2d 616 (7th Cir. 1982) ................................................... 6, 13

*Brown v. Reyes*, No. 11 C 560, 2011 WL 3839760 (N.D. Ill. Aug. 26, 2011) ........................ 9, 11

*Buchanan-Moore v. City of Milwaukee*, 576 F. Supp. 2d 944 (E.D. Wis. 2008) .................. 10, 11

*Buchanan-Moore v. County of Milwaukee*, 570 F.3d 824 (7th Cir. 2009) .......................... 8, 9, 10

*Charleston v. Larson*, 297 Ill.App.3d 540, 696 N.E.2d 793 (1st Dist. 1998) .............................. 17

*City & County of San Francisco, California v. Sheehan*, 135 S. Ct. 1765 (2015) ................. 12-13

*DeShaney v. Winnebago County Department of Social Services*, 489 U.S. 189 (1989) .. 5, 6, 7, 13

*Doe 1 ex rel. Tanya S. v. North Central Behavioral Health Systems, Inc.*,
352 Ill.App.3d 284, 816 N.E.2d 4 (3d Dist. 2004) ....................................................... 16

*Doe v. McKay*, 183 Ill.2d 272, 700 N.E.2d 1018 (Ill. 1998) ....................................... 14

*Doe v. Village of Arlington Heights*, 782 F.3d 911 (7th Cir. 2015)............................................ 4, 7

*Eckhardt v. Kirts*, 179 Ill.App.3d 863, 534 N.E.2d 1339 (2d Dist. 1989) ............................ 16, 17

*Erwin v. Daley*, 92 F.3d 521 (7th Cir. 1996) ............................................................. 13

*Gill v. City of Milwaukee*, 850 F.3d 335 (7th Cir. 2017) ............................................ 12

*Jackson v. Chicago Classic Janitorial & Cleaning Service, Inc.*,
355 Ill.App.3d 906, 823 N.E.2d 1055 (1st Dist. 2005).............................................. 19

*Jackson v. Indian Prairie School District 204*, 653 F.3d 647 (7th Cir. 2011) ............................... 6

*King ex rel. King v. E. St. Louis School District 189*, 496 F.3d 812 (7th Cir. 2007) .................... 11

*Kirk v. Michael Reese & Hospital Medical Center*,
117 Ill.2d 507, 513 N.E.2d 387 (Ill. 1987) ........................................................... 14, 15

*Kolbe & Kolbe Health & Welfare Benefit Plan v. Medical College of Wisconsin, Inc.*,
657 F.3d 496 (7th Cir. 2011) ................................................................................. 20

*Lee v. Chicago Transit Authority*, 152 Ill.2d 432, 605 N.E.2d 493 (Ill. 1992) ...................... 16, 17

*Lyon by Lyon v. Hasbro Industries, Inc.*,
156 Ill.App.3d 649, 509 N.E.2d 702 (4th Dist. 1987) .................................................. 19

*Marshall v. Burger King Corp.*, 222 Ill.2d 422, 856 N.E.2d 1048 (Ill. 2006) ........................... 13

*Martinez v. State of Cal.*, 444 U.S. 277 (1980) ........................................................... 9

*Orgone Capital III, LLC v. Daubenspeck*, 912 F.3d 1039 (7th Cir. 2019) ................................. 18

*Pearson v. Callahan*, 555 U.S. 223 (2009) ........................................................... 12, 13

*Pugh v. Tribune Co.*, 521 F.3d 686 (7th Cir. 2008) ....................................................... 10

*Reed v. Palmer*, 906 F.3d 540 (7th Cir. 2018) ........................................................... 18

*Reichle v. Howards*, 566 U.S. 658 (2012) ................................................................ 12

*Reynolds v. National Railroad Passenger Corp.*,
216 Ill.App.3d 669, 576 N.E.2d 1041, (1st Dist. 1991) .................................................. 16

*Sandage v. Board of Commissioners*, 548 F.3d 595 (7th Cir. 2008) ....................................... 11

*Sherer v. Sarma*, 2014 IL App. 5th 130207, 18 N.E.3d 181 (5th Dist. 2014) ............................. 16

*Stevens v. Umsted*, 131 F.3d 697 (7th Cir. 1997) ....................................................... 6, 7

*Tedrick v. Community Resource Center Inc.*, 235 Ill.2d 155, 920 N.E.2d 220 (Ill. 2009) ........... 15

*Williams v. Athletico, Ltd.*,
2017 IL App. (1st) 161902, 74 N.E.3d 1047 (1st Dist. 2017) .......................................... 19-20

*Wilson-Trattner v. Campbell*, 863 F.3d 589 (7th Cir. 2017) .......................................... 6, 7, 8, 13

**Statutes**

405 ILCS 5/1-122 ............................................................................................. 14

405 ILCS 5/6-103(b).......................................................................................... 14

735 ILCS 5/2-622 ........................................................................................ 18, 20

740 ILCS 110/11(viii).......................................................................................... 15

**Other Authorities**

*Pop. & Hous. Occupancy Status: 2010–U.S.–Metro. Stat. Area* (Census 2010) *available at* https://factfinder.census.gov/faces/tableservices/jsf/pages/productview.xhtml?pid=DEC_10_N SRD_GCTPL2.US24PR&prodType=table (last accessed Aug. 13, 2019) ............................. 10

*UIUC On-Campus Enrollment by Curriculum & Student Level: Spring 2010* (Enrollment Report 2010), *available at* http://www.dmi.illinois.edu/stuenr/class/enrsp10.htm (last accessed Aug. 13, 2019) ............................................................................................................. 10

## INTRODUCTION

This case arises from a tragic and senseless crime: the abduction and murder of Yingying Zhang ("Ms. Zhang") on June 9, 2017, by Defendant Brendt A. Christensen ("Christensen"). Christensen has been convicted of his crime and is a separate defendant in this case on a claim of battery (Count V). Yet Plaintiff Daniel Deneen, as administrator of Ms. Zhang's estate (the "Estate"), also brings four federal and state law claims against two social workers, Defendants Thomas G. Miebach ("Mr. Miebach") and Jennifer R. Maupin ("Ms. Maupin") (collectively, the "Social Workers"), who did not participate in any way in Ms. Zhang's abduction or murder. The Estate seeks to hold the Social Workers liable for Ms. Zhang's death on the theory that Christensen saw each of them once, on March 30, 2017, when he sought services at the University of Illinois at Urbana-Champaign Counseling Center (the "Center") for substance abuse and depression. The Estate alleges that, because Christensen spoke of general homicidal ideations and non-specific actions relating to those ideations, the Social Workers should have predicted and acted to prevent Christensen's abduction and murder of Ms. Zhang more than two months later.

Mr. Miebach and Ms. Maupin have nothing but the greatest sympathy for Ms. Zhang's family and the unfathomable shock, horror, and grief they have experienced in the wake of Christensen's crime. At the same time, the Social Workers are not and cannot be held legally responsible for the random and incomprehensible actions of a lone individual committed more than two months after the Social Workers saw Christensen a single time each. The U.S. Constitution does not impose upon state-employed mental health professionals the impossible duty of predicting and preventing the infinite permutations by which one person can decide to harm another, and state law likewise does not hold them to such an unattainable standard of care.

The Estate's two federal claims against the Social Workers under 42 U.S.C. § 1983 (Counts

I and II) allege they acted under color of law to deprive Ms. Zhang of her liberty under the Fourteenth Amendment. The Estate alleges the Social Workers created a "heightened danger" when they "affirmatively responded" to Christensen's homicidal ideations and undertook a treatment plan without ensuring his symptoms had resolved. It further alleges the Social Workers "affirmatively encouraged" Christensen's ideations by effectively representing to him that his symptoms had resolved and ceasing treatment. These claims should be dismissed for four reasons. First, the Estate does not plausibly allege the Social Workers created or increased a danger to Ms. Zhang. Second, the Estate does not plausibly allege the actions of the Social Workers proximately caused Ms. Zhang's injuries. Third, the Estate does not allege conduct that "shocks the conscience." Fourth, the Estate's claims are barred by the doctrine of qualified immunity.

The Estate's two state law claims for negligence against the Social Workers (Counts III and IV) allege they breached their putative duty to discourage Christensen's homicidal ideations. These claims should also be dismissed for four reasons. First, Illinois law does not recognize the duty asserted by the Estate. Second, the Estate does not plausibly allege the Social Workers' alleged breach of duty proximately caused Ms. Zhang's injuries. Third, the Complaint lacks the affidavit required to plead a "healing art malpractice" claim. Fourth, if the Court dismisses the Estate's federal claims, it should dismiss the remaining state law claims for lack of jurisdiction.

## THE ESTATE'S ALLEGATIONS

The Social Workers deny all claims asserted against them, but treat the Estate's factual allegations as if they were true for purposes of this motion.

On March 21, 2017, Christensen, then a student at the University of Illinois at Urbana-Champaign (the "University"), sought services at the Center for substance abuse problems. (Complaint ("Compl.") ¶¶ 14, 15, 17-18, 29, 32.) During his intake, Christensen reported a variety

of issues, including substance abuse, prior hospitalizations for mental health concerns, suicidal thoughts, depression, anxiety, losing touch with reality, and feeling isolated and alone. (*Id.* ¶¶ 18-22.) During an interview with a student intern, Christensen discussed these issues, as well as marital issues, suicidal and homicidal ideations, and an obsession with serial killers. (*Id.* ¶¶ 23-27.)

On March 30, 2017, Christensen saw Ms. Maupin for an Alcohol and Other Drugs Assessment. (*Id.* ¶ 29). During this assessment, Christensen discussed suicidal ideations; the Complaint does not allege any discussion of homicidal ideations with Ms. Maupin. (*Id.* ¶ 30). Christensen agreed to be evaluated for his risk of harm to himself or others. (*Id.* ¶ 31.) Ms. Maupin referred Christensen to Mr. Miebach the same day. (*Id.* ¶ 32). Ms. Maupin and Mr. Miebach are Master Social Workers and Licensed Clinical Social Workers. (*Id.* ¶¶ 29, 32). Mr. Miebach found Christensen had passive suicidal ideations in response to conflict inside his marriage. (*Id.* ¶ 33). During this assessment, Christensen allegedly told Mr. Miebach he thought about murder analytically and getting away with murder, and discussed having purchased items that could be used to transport and dispose of a body. (*Id.* ¶ 34). The Complaint characterizes these statements as specific, plausible, and identifiable threats of harm to others and concrete steps taken to harm another person, demonstrating a high-level threat of harm to others. (*Id.* ¶¶ 35-37, 39-40).

The Social Workers allegedly initiated a treatment plan for Christensen that allowed him to remain a graduate teacher, purportedly with deliberate indifference to his risk of harm to others at the University. (*Id.* ¶¶ 40-41). According to the Estate, this "effectively" encouraged Christensen to believe his homicidal ideations did not require immediate and long-term care. (*Id.*). The Complaint alleges on information and belief that the Social Workers took unspecified "affirmative steps" to treat Christensen, then ceased treatment without initiating any emergency or acute

treatment options for Christensen to safeguard University students. (*Id.* at ¶ 42.) The Complaint does not allege the Social Workers ever met with Christensen after March 30.

The Estate alleges the Social Workers' treatment of Christensen affirmatively increased the risk of violence to University students, including Ms. Zhang, and placed Ms. Zhang in heightened danger, resulting in her death. (*Id.* ¶¶ 77-82, 94-99, 115, 124-25). The Complaint alleges the Social Workers did this by failing to treat Christensen's symptoms to necessary resolution, inferring to Christensen that his treatment plan was satisfactorily concluded, which allegedly encouraged his homicidal ideations, not including any intervention by University officials, human resources, or law enforcement, and discharging Christensen without safely transitioning him back into the community or providing adequate safeguards for the students. (*See id.* ¶¶ 43-46; *see also id.* ¶¶ 47-73).

Counts I and II of the Complaint assert claims for wrongful death and survival against the Social Workers pursuant to 42 U.S.C. § 1983. (Compl. ¶¶ 74-107). Counts III and IV assert state law negligence claims for wrongful death and survival against the Social Workers. (*Id.* ¶¶ 108-25). Count V asserts a state law claim for battery against Christensen. (*Id.* ¶¶ 126-30).

## LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must provide the grounds of her "entitle[ment] to relief [which] requires more than labels and conclusions[.]" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The Complaint "must provide enough factual information to state a claim to relief that is plausible on its face and raise a right to relief above the speculative level." *Doe v. Vill. of Arlington Heights*, 782 F.3d 911, 914 (7th Cir. 2015) (internal citation and quotations omitted). Further, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556

4

U.S. 662, 678 (2009).

## ARGUMENT

I.    **The Estate's Federal Causes of Action (Counts I & II) Fail to State a Plausible Claim for Relief Under 42 U.S.C. § 1983**

The Estate's first two cause of action assert that the Social Workers had a constitutional duty as state employees under the Due Process Clause to intervene to protect Ms. Zhang's bodily integrity against another individual's private acts of violence. The U.S. Supreme Court rejected this theory three decades ago in *DeShaney v. Winnebago County Department of Social Services*, 489 U.S. 189 (1989). *DeShaney* involved "undeniably tragic" claims against state-employed social workers, who received credible complaints that a young boy was being abused by his father but did not act to remove him from his father's custody. *Id*. at 191. The boy's father eventually beat him so severely he suffered permanent brain damage. The boy and his mother sued the social workers under 42 U.S.C. § 1983 for failing to intervene to protect him against a risk of violence at his father's hands of which they knew or should have known. *Id*. at 193.

The Supreme Court held "nothing in the language of the Due Process Clause itself requires the State to protect the life, liberty, and property of its citizens against invasion by private actors." *Id*. at 195. Because the clause "is phrased as a limitation on the State's power to act," and not a guarantee of "minimal levels" of safety, "a State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause." *Id*. at 195, 197. Thus, "[b]ecause [] the State had no constitutional duty to protect [the boy] against his father's violence, its failure to do so—though calamitous in hindsight—simply does not constitute a violation of the Due Process Clause." *Id*. at 202. The Court cautioned judges not to yield to "natural sympathy" to "find a way" to provide compensation where "[t]he most that can be said of the state functionaries in this case is that they stood by and did nothing when suspicious circumstances dictated a more

5

active role for them." *Id*. at 202-03. The Seventh Circuit has similarly declared, where "[a]ll that is alleged is a failure to protect [a woman] and others like her from a dangerous madman, [] as the State of Illinois has no federal constitutional duty to provide such protection[,] its failure to do so is not actionable under section 1983." *Bowers v. DeVito*, 686 F.2d 616, 618 (7th Cir. 1982).

The Estate seeks to avoid these holdings through allegations designed to invoke the "state-created danger" exception, asserting in conclusory terms that the Social Workers "created" a "heightened danger" to Ms. Zhang through their "affirmative" actions. (*See* Compl. ¶¶ 40-42, 78-81, 86, 95-98, 103). This exception, however, is "a narrow doctrine that applies only in rare and often egregious circumstances." *Wilson-Trattner v. Campbell*, 863 F.3d 589, 593 (7th Cir. 2017) (internal citation and quotations omitted). To plead a state-created danger claim, the Estate must plausibly allege that (i) the Social Workers' affirmative acts created or increased a danger that Ms. Zhang faced, (ii) their failure to protect Ms. Zhang proximately caused her injuries, and (iii) their conduct shocks the conscience. *Jackson v. Indian Prairie Sch. Dist. 204*, 653 F.3d 647, 654 (7th Cir. 2011). The Complaint does not adequately allege any of these elements. Additionally, the Social Workers are shielded by the doctrine of qualified immunity.

### A. The Estate Fails to Allege Plausible Affirmative Acts Creating or Increasing a Danger to Ms. Zhang

Counts I and II lack plausible allegations of an "affirmative act" creating or increasing a danger to Ms. Zhang. *Stevens v. Umsted*, 131 F.3d 697, 705 (7th Cir. 1997). At the outset, the Complaint includes no plausible allegations of any "affirmative acts" by the Social Workers. The Estate alleges the Social Workers "initiated" an unspecified "treatment plan" but "failed to initiate" any "emergency or acute treatment options" and did not "include" plans for intervention that would "safely transition" Christensen into society. (Compl. ¶¶ 40, 42, 45-46, 83, 85, 100, 102). These allegations at best plead a failure to act, not affirmative acts, and cannot ground a state-created

6

danger case. *See Wilson-Trattner*, 863 F.3d at 595 (explaining "the inaction of state officials [is] insufficient to support a claim under the state-created danger doctrine"); *Stevens*, 131 F.3d at 705 (holding "inaction by the state in the face of a known danger is not enough to trigger the obligation to protect private citizens from each other"). The Complaint's efforts to bootstrap these allegations onto conclusory "affirmative act" language (*see* Compl. ¶¶ 86, 103) is inconsequential, as "such semantics cannot skirt precedent[.]" *Wilson-Trattner*, 863 F.3d at 594.

The Estate's assertion that the Social Workers heightened the danger Ms. Zhang faced by undertaking and then ceasing to treat Christensen (*see* Compl. ¶¶ 78-81, 95-98) likewise is not legally cognizable. "To create or increase must not be interpreted so broadly as to erase the essential distinction between endangering and failing to protect and thus circumvent *DeShaney*'s general rule." *Doe*, 782 F.3d at 917 (internal citation and quotations omitted). In *Doe*, the plaintiff sued a police officer who responded to a 911 call regarding three men, saw the plaintiff in the men's presence, called off another officer, falsely reported the men were gone, and left, after which the men sexually assaulted the plaintiff. *Id.* at 913. The Seventh Circuit affirmed dismissal, finding not even these alleged affirmative acts "created or increased the danger" to the plaintiff, because "we have no way of knowing what would have happened" had the defendant not called off the other officer or made a false report to dispatch. *Id.* at 918. Similarly, the Estate's allegations here present no plausible facts enabling this Court to know whether the Social Workers' alleged initiation and cessation of treatment had any effect on Christensen's danger to Ms. Zhang.

The Seventh Circuit has also applied *DeShaney* to bar claims that, as here, turn on allegations of **indirectly** heightened danger. In *Wilson-Trattner*, a group of officers allegedly routinely failed to protect a woman from her physically abusive boyfriend over the course of sixteen months, including affirmatively "cajoling her" by telling her she could go to jail for hitting

her boyfriend. 863 F.3d at 594. The court nonetheless found no officer "directly encouraged [the boyfriend] or otherwise told him that he could abuse [the plaintiff] with immunity," and even if the officers' actions "ultimately increased the danger" by "indirectly emboldening" the abuser, "that would not distinguish her case from *DeShaney*." *Id.*

The Estate's allegations suffer from this same defect, alleging the Social Workers' cessation of treatment "***effectively*** represented to Defendant Christensen that his homicidal ideations had resolved," "***encouraged*** [him] to believe that his homicidal ideations were benign," and "***implied*** to [him] that his actions were permissible." (Compl. at ¶¶ 79-81, 96-98) (emphases added). The Seventh Circuit's rejection of a state-created danger theory premised on "implicitly condon[ed] violence" thus bars Counts I and II. *Wilson-Trattner*, 863 F.3d at 596.

### B. The Estate's Allegations Do Not Plausibly Allege Proximate Cause

Counts I and II further lack plausible allegations that the Social Workers proximately caused Christensen's abduction and murder of Ms. Zhang. To allege proximate cause, Ms. Zhang "must have been a foreseeable victim of the [Social Workers'] acts." *Buchanan-Moore v. Cnty. of Milwaukee*, 570 F.3d 824, 828 (7th Cir. 2009). Foreseeability requires plausible allegations of both (i) familiarity, and (ii) specificity. *Id*. The Estate alleges neither.

*Buchanan-Moore* starkly illustrates the Estate's inability to allege proximate cause. There, a man named "Gray" was arrested at least 35 times on 77 charges between 1996 and 2006, many stemming from "assaultive and violent attacks." *Id.* at 826. On June 13, 2006, Gray was arrested for swinging a golf club at bystanders. Milwaukee doctors testified at a civil commitment hearing that he "posed an immediate threat to others[.]" *Id*. Gray was released from custody due to administrative error, then arrested for home invasion, left unmedicated while in custody, and released again four days later for "unclear" reasons. *Id*. Afterwards, he broke into a home and shot a man in the head, killing him just over a month after the June 13 arrest. *Id*.

The Seventh Circuit affirmed dismissal of the family's state-created danger claim against City and County officials for failure to allege proximate cause. *See id.* at 828-29. With respect to familiarity, the Court noted there was no allegation "that Gray had previously carried a weapon or shot someone." *Id*. at 828. It held that "unpredictable" events resulting from failures to protect are not "legally foreseeable," and consequently too unfamiliar to establish proximate cause. *Id*. Thus, despite the defendants' knowledge of Gray's violent history, "Gray's acquisition of a gun, and its use on an innocent bystander were events that were unpredictable rather than legally foreseeable." *Id.* (internal quotations omitted). As to specificity, "[d]angers to the public at large are insufficient for constitutional purposes." *Id.* at 828 (citing *Martinez v. State of Cal.*, 444 U.S. 277, 285 (1980)). Such "danger must [] be limited in time and scope." *Brown v. Reyes*, No. 11 C 560, 2011 WL 3839760, at *4 (N.D. Ill. Aug. 26, 2011) (citing *Buchanan-Moore*, 570 F.3d at 828).

The same reasoning applies here. The Complaint lacks any allegations of familiarity. The Estate does not allege any prior conduct or specific statements by Christensen, or any other knowledge on the part of the Social Workers, demonstrating familiarity with Christensen's eventual abduction and murder of Ms. Zhang. (*See* Compl. ¶¶ 57, 62, 67, 70). Nothing in this case rises even to the insufficient level of *Buchanan-Moore*, where the defendants were allegedly aware of a decade of violent criminal history, a trio of recent crimes of aggression, and that "Gray's assaultive behavior could continue if he remained unmedicated." 570 F.3d at 826. As for specificity, the Estate attempts to narrow the field of danger from "the public at large" to "students in [Christensen's] community at the University." (Compl. ¶¶ 40, 77, 94). Yet the Complaint does not allege Christensen's "homicidal ideations" were directed specifically to University students, much less that he communicated any such particularized homicidal ideations to the Social Workers. (*See* Compl. ¶¶ 17, 24, 30, 40-42, 44, 77-79, 84, 94-97, 101).

9

Even if the Estate could plead a familiar danger specific to the University "community," which it cannot, that would still be insufficient. In *Buchanan-Moore*, the district court judicially noticed that the north side of Milwaukee had approximately 260,000 residents. *See Buchanan-Moore v. City of Milwaukee*, 576 F. Supp. 2d 944, 954 n.2 (E.D. Wis. 2008). Against this backdrop, the Seventh Circuit found a "generalized, amorphous zone of danger" directed to a "geographic locale" shared by "thousands of others" is "insufficient to trigger a state duty to protect." *Buchanan-Moore*, 570 F.3d at 828. Similarly, in this case, the Estate's allegations that Christensen posed a threat to his community—a metropolitan area of more than 230,000 residents and more than 40,000 students[1]—is insufficiently specific to state a claim.

The Estate's vague insinuation of a "foreseeable threat of Defendant Christensen's homicidal potential toward the safety of the University's students" (Compl. ¶ 46) is the kind of imprecise "indefinite" danger allegation based on "mental illness" or a "propensity for criminal acts [] without temporal boundaries" held inadequate to plead proximate cause. *Buchanan-Moore*, 570 F.3d at 829. Just as the harm occurring more than a month after Gray's original arrest in *Buchanan-Moore* "was simply too remote a consequence of the County's actions" to sustain a state-created danger claim, Christensen's abduction and murder of Ms. Zhang more than two months after he saw each of the Social Workers one time each is too remote to plead proximate cause. *Id*.

---

[1] *See Pop. & Hous. Occupancy Status: 2010–U.S.–Metro. Stat. Area* (Census 2010) *available at* https://factfinder.census.gov/faces/tableservices/jsf/pages/productview.xhtml?pid=DEC_10_NSRD_GCTPL2.US24PR&prodType=table (last accessed Aug. 13, 2019); *UIUC On-Campus Enrollment by Curriculum & Student Level: Spring 2010* (Enrollment Report 2010), *available at* http://www.dmi.illinois.edu/stuenr/class/enrsp10.htm (last accessed Aug. 13, 2019). This Court may take judicial notice of these census population figures and public enrollment figures as public records. *See Barnett v. Daley*, 32 F.3d 1196, 1198 (7th Cir. 1994) (allowing consideration of census population figures in deciding a motion to dismiss); *Pugh v. Tribune Co.*, 521 F.3d 686, 691 (7th Cir. 2008).

### C.  The Estate Does Not Allege Conscience-Shocking Conduct

Counts I and II also allege no facts that plausibly shock the conscience. The conscience-shocking conduct requirement "is a reminder that liability for a constitutional tort requires proof that the defendant acted (or failed to act) not merely negligently but recklessly (equivalently, with 'deliberate indifference' to the risk of harm that he was creating)." *Sandage v. Bd. of Comm'rs*, 548 F.3d 595, 509 (7th Cir. 2008). "[I]n all cases, the conduct must be more culpable than mere negligence, which is categorically beneath the threshold of constitutional due process." *King ex rel. King v. E. St. Louis Sch. Dist. 189*, 496 F.3d 812, 819 (7th Cir. 2007).

The district court in *Buchanan-Moore*, for example, found that a host of alleged state failures—including neglecting to deliver a criminal complaint in time to prevent Gray's erroneous release, failing to bring burglary charges, releasing Gray multiple times in short succession, and not realizing Gray should remain in custody—suggested "nothing more than negligence." 576 F. Supp. 2d at 955. None of these allegations "exhibit[ed] deliberate indifference to the rights of any Milwaukee residents," as required to shock the conscience. *Id.*

The Estate's allegations fall well short of those found insufficient to shock the conscience in *Buchanan-Moore*. The Complaint repeatedly intones the phrase "deliberate indifference," but the conduct alleged is "initiat[ing] a treatment plan," while "allow[ing]" Christensen "to remain working as a graduate teacher" and "apparently ceas[ing] treatment without initiating any emergency or acute treatment options[.]" (Compl. ¶¶ 40-42, 46, 83-85, 100-02). If releasing a mentally ill inmate with a violent criminal history back onto the streets does not "shock the conscience," the Social Workers' purported failure to foresee that Christensen—a patient with no history of violence whom they saw just once—would violently abduct and murder Ms. Zhang months later, cannot be conscience-shocking. *See also Brown*, 2011 WL 3839760, at *1, 5 (holding that probation department's failure to supervise a convicted sex offender's compliance with

probation rules, allegedly resulting in physical and sexual assault, did not shock the conscience).

## II.   Counts I and II Should Be Dismissed Based on Qualified Immunity

The Social Workers are further immune to the Estate's claims under the doctrine of qualified immunity, which "protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (internal citation and quotations omitted). In determining whether to dismiss on qualified immunity grounds, this Court asks, "(1) whether the facts, taken in the light most favorable to the plaintiff, make out a violation of a constitutional right, and (2) whether that constitutional right was clearly established at the time of the alleged violation." *Allin v. City of Springfield*, 845 F.3d 858, 862 (7th Cir. 2016) (internal citations and quotations omitted).

The Complaint's allegations do not make out a violation of a constitutional right. *See* Argument §§ I.A-C, *supra*. The Estate also has not alleged the violation of any clearly established right. "[C]ourts may grant qualified immunity on the ground that a purported right was not clearly established by prior case law, without resolving the often more difficult question whether the purported right exists at all." *Reichle v. Howards*, 566 U.S. 658, 664 (2012) (internal citation and quotations omitted). "A clearly established right is one that is sufficiently clear that every reasonable official would understand that what he is doing violates that right," and "should not be defined at a high level of generality." *Gill v. City of Milwaukee*, 850 F.3d 335, 340 (7th Cir. 2017) (internal citations and quotations omitted). "While a case directly on point is not required, the clearly established law must be particularized to the facts of the case" and "existing precedent must have placed the statutory or constitutional question beyond debate." *Id*. "This exacting standard gives government officials breathing room to make reasonable but mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." *City & Cnty.*

*of S.F., Cal. v. Sheehan*, 135 S. Ct. 1765, 1774 (2015) (internal citation and quotations omitted).

The right asserted here is not clearly established. At the time of the Social Workers' contact with Christensen, no Supreme Court or Seventh Circuit precedent pronounced a due process obligation to protect Ms. Zhang or any other person from Christensen's private violence. Indeed, all precedent is directly to the contrary. *See Wilson-Trattner*, 863 F.3d at 596, 596 n.4 (finding even if a state-created danger claim were viable based on "implicitly condoning violence," which it is not, "the [defendant officers] would be entitled to qualified immunity in their individual capacities, since the unconstitutionality of [their] actions is far from clearly established under *DeShaney*"); *see also DeShaney*, 489 U.S. at 197; *Bowers*, 686 F.2d at 618.

Because the qualified immunity doctrine exists "to ensure that insubstantial claims against government officials will be resolved prior to discovery," the Supreme Court has "repeatedly [] stressed the importance of resolving immunity at the earliest possible stage in litigation." *Pearson*, 555 U.S. at 232 (internal citation and quotations omitted). "Once a public official raises the defense of qualified immunity, the plaintiff bears the burden of proof on the issue." *Erwin v. Daley*, 92 F.3d 521, 525 (7th Cir. 1996). Because the Estate cannot demonstrate that the Social Workers violated a clearly established right, Counts I and II should be dismissed.

### III.   The Estate Does Not Plead a Plausible Negligence Theory (Counts III & IV)

The Estate's remaining counts against the Social Workers attempt to state negligence claims. To do so, the Estate "must allege facts that establish the existence of a duty of care owed by the defendant to the plaintiff, a breach of that duty, and an injury proximately caused by that breach." *Marshall v. Burger King Corp.*, 222 Ill.2d 422, 856 N.E.2d 1048, 1053 (Ill. 2006). The Estate's Complaint cannot satisfy the elements of duty, breach, or proximate cause. The claims also fail because the Estate has not submitted the requisite affidavit in support of its "healing art malpractice" claim, and for want of supplemental jurisdiction.

13

### A.    The Estate Does Not Allege an Actionable Duty of Care

The Estate asserts the Social Workers "had a duty to exercise ordinary care to discourage Defendant Christensen's homicidal ideations." (Compl. at ¶¶ 111, 120). To the extent the Social Workers owed any duty of care with respect to Christensen's mental health, however, such a duty ran solely from the Social Workers to Christensen, and not to a nonpatient third party like Ms. Zhang, who was entirely unknown to the Social Workers. *See Kirk v. Michael Reese & Hosp. Med. Ctr.*, 117 Ill.2d 507, 513 N.E.2d 387, 399 (Ill. 1987) (holding that any duty a psychiatrist owed to a recently discharged patient to warn the patient that his prescription drugs could impair his driving abilities did not give rise to a duty to a third party injured by the patient's driving, because "such a broad duty extended to the general public would expand the physician's duty of care to an indeterminate class of potential plaintiffs"); *Doe v. McKay*, 183 Ill.2d 272, 700 N.E.2d 1018, 1023–25 (Ill. 1998) (reaffirming *Kirk* and holding that imposing a duty on therapists to third parties would be "fundamentally inconsistent with the therapist's obligation to the patient").

Both the Illinois General Assembly and the Illinois courts have tightly circumscribed the circumstances under which a plaintiff can assert a duty of care owed by a mental health professional to a non-patient third party. Under the Mental Health and Developmental Disabilities Code, "there shall be no liability on the part of, and no cause of action shall arise against," a "qualified examiner" (defined at 405 ILCS 5/1-122 to include clinical social workers) "based upon that person's failure to warn of and protect from a recipient's threatened or actual violent behavior except where the recipient has communicated to the person a serious threat of physical violence against a reasonably identifiable victim or victims." 405 ILCS 5/6-103(b).[2]

---

[2] The Mental Health and Developmental Confidentiality Act likewise authorizes disclosure of mental health records only "when, and to the extent, in the ***therapist's sole discretion***, disclosure is necessary to warn or protect a ***specific individual*** against whom a recipient has made a ***specific***

14

Consistent with this standard, in *Tedrick v. Community Resource Center Inc.*, 235 Ill.2d 155, 920 N.E.2d 220 (Ill. 2009), the Illinois Supreme Court dismissed wrongful death and survival actions asserted against psychologists and social workers alleged to have provided negligent medical care to the decedent's husband and to have failed to warn the decedent of and protect her from her husband's threats and potential violent acts, resulting in her death. *Id*. at 221. The court rejected plaintiffs' voluntary undertaking theory, holding that *Kirk* and *McKay* govern and plaintiffs' claims must fail in the absence of a therapist-patient relationship between the decedent and the defendant mental health professionals. *Id*. at 229-30. The court further rejected plaintiffs' theory of "transferred negligence," holding that the concept of transferred negligence is limited to "circumstances where there was a special, intimate relationship" between the patient and the plaintiff, and finding that the spousal relationship at issue was not a special relationship for purposes of "the direct personal injury actions brought by plaintiffs." *Id*. at 230-32. The court reaffirmed *Kirk*'s declaration that a third party cannot maintain a medical malpractice action "'absent a direct physician-patient relationship between the doctor and plaintiff or a special relationship [] between the patient and the plaintiff.'" *Id*. at 230-31 (quoting *Kirk*, 513 N.E.2d at 399). The Estate alleges no such physician-patient relationship or special relationship in this case.

The Complaint also criticizes the Social Workers for failing to seek "intervention" by "University officials, human resources, or law enforcement." (Compl. ¶ 45). To the extent this is an attempt to ground the Estate's claims in a duty to disclose Christensen as a threat, the Complaint fails to allege the necessary elements of such a duty. To plausibly state a claim based on a duty to disclose a patient as a threat, the Estate must allege that (i) Christensen made specific threats of

---

**threat of violence** where there exists a **therapist-recipient relationship** or a **special recipient-individual relationship**." 740 ILCS 110/11(viii) (emphases added).

violence, (ii) the threats of violence were directed against a specific and readily identifiable victim, and (iii) there is either a direct physician-patient relationship between the Social Workers and Ms. Zhang or a special relationship between Christensen and Ms. Zhang. *Doe 1 ex rel. Tanya S. v. N. Cent. Behavioral Health Sys., Inc.*, 352 Ill.App.3d 284, 816 N.E.2d 4, 9 (3d Dist. 2004). *See also Eckhardt v. Kirts*, 179 Ill.App.3d 863, 534 N.E.2d 1339, 1344 (2d Dist. 1989). The Estate does not allege Christensen made any specific threats of violence at all, let alone directed specifically to Ms. Zhang, and does not allege either a physician-patient relationship or a special relationship. Thus, the Estate cannot state a negligence claim grounded in the Social Workers' alleged duty to disclose. *See Sherer v. Sarma*, 2014 IL App. 5th 130207, 18 N.E.3d 181, 193 (5th Dist. 2014) (finding "no legal duty to protect or warn" absent "evidence that [the patient] had ever made any specific threats to harm [the decedent]"); *Abraham v. Wayside Cross Rescue Mission*, 289 Ill.App.3d 1048, 682 N.E.2d 1240, 1243 (2d Dist. 1997) (finding no duty to disclose in the absence of "specific threats" towards the victim); *Reynolds v. Nat'l R.R. Passenger Corp.*, 216 Ill.App.3d 669, 576 N.E.2d 1041, 1043 (1st Dist. 1991) (holding the absence of any "specific threats of violence toward [the decedent]" eliminated the plaintiff's ability to prevail on a duty to disclose claim).

### B.   The Estate Does Not Allege Proximate Cause

The Estate also cannot satisfy its burden of pleading plausible facts showing a breach of duty by the Social Workers that proximately caused Ms. Zhang's abduction and murder more than two months later. Under Illinois law, "proximate cause" entails both "cause in fact" and "legal cause." *Lee v. Chi. Transit Authority*, 152 Ill.2d 432, 605 N.E.2d 493, 502 (Ill. 1992). "Cause in fact" requires "a reasonable certainty that a defendant's acts caused the injury or damage," meaning it was "a material element and a substantial factor in bringing about the injury." *Id*. As already discussed, the Estate's allegations of proximate cause are wholly speculative, failing to establish with "reasonable certainty" that the Social Workers' acts were a "substantial factor" in bringing

16

about Christensen's crime months later. *See* Argument § I.B, *supra*.

"Legal cause" limits "how far a defendant's legal responsibility should be extended for conduct that, in fact, caused the harm." *Lee*, 605 N.E.2d at 502. It "is essentially a question of foreseeability," and exists only "if the injury is of a type which a reasonable man would see as a likely result of his conduct." *Id*. at 503 (internal citation and quotations omitted). Here, there is no allegation Christensen made any specific threats or identified any potential victim to the Social Workers, much less particularized threats directed to Ms. Zhang, making her an unforeseeable victim. *See Charleston v. Larson*, 297 Ill.App.3d 540, 696 N.E.2d 793, 801-02 (1st Dist. 1998) (affirming dismissal of negligence claim against a psychiatrist whose patient attacked the plaintiff nurse, holding the patient's attack was not reasonably foreseeable where the "only specific threats" by the patient to the nurse "occurred on the same day of the attack," and the plaintiff "never alleged that defendant had knowledge of [] threats directed to plaintiff"); *see also Eckhardt*, 534 N.E.2d at 1344-45 (affirming summary judgment for a defendant psychiatrist whose patient killed her husband, because no evidence suggested the patient "ever made specific threats of violence against her husband," meaning there was "no reasonably foreseeable risk" he would be harmed). Thus, the Estate asserts no plausible factual basis to support proximate cause.[3]

### C.   The Complaint Relies on a Document Refuting Its Own Allegations

Though the Court can decide this motion on the face of the Complaint alone, and need go no further, a key record incorporated into the Complaint further refutes its central allegations. This Court may consider documents "incorporated by reference in the pleadings" and documents "critical to the complaint and referred to in it" in deciding a motion to dismiss, without converting

---

[3] The Complaint also fails to allege proximate cause with respect to Ms. Maupin for an additional reason; it does not allege Christensen discussed his homicidal ideations with Ms. Maupin at all. (*See* Compl. ¶ 30).

it into a summary judgment motion. *Orgone Capital III, LLC v. Daubenspeck*, 912 F.3d 1039, 1044 (7th Cir. 2019); *Reed v. Palmer*, 906 F.3d 540, 548 (7th Cir. 2018). Multiple paragraphs of the Complaint reference and quote Mr. Miebach's assessment of Christensen, noting Christensen revealed thinking about murder "in an analytical fashion," including "killing a person and getting away with it," and "admitted to having purchased items that could be used in the transport and disposal of the body." (Compl. ¶¶ 33-34). The Complaint points to these notes as "[f]orewarning future events" and constituting "specific and plausible threats of harm to others." (*Id*. ¶¶ 34-35).

Yet when the allegations of the Complaint are compared to the actual assessment they reference and rely upon (attached hereto as **Exhibit A**), there are conspicuous omissions. It adds:

> [Christensen] denied having any specific plans or intent to act on these thoughts. He denied having any violent urges or history of violence towards others. He admitted to having previously purchased items that would be used in the 'transport and disposal' of a body, which he did not further identify, but has since disposed of these items. He denied any current access to weapons. He expressed multiple times his fear of imprisonment prevents him from acting on these homicidal thoughts, which he characterized as a fantasy.

*See* Ex. A. Thus, far from expressing "specific and plausible threats of harm to others," the assessment documents Christensen's repeated denials of any such threats. This assessment, though not necessary to dismissal, further reflects the implausibility of the Estate's allegations.

### D. The Estate Did Not File the Affidavit Required to Plead its Healing Art Malpractice Claims

In addition to the facial defects of Counts III and IV, the Estate also has not fulfilled the necessary statutory prerequisites to sue the Social Workers for negligence. In an action seeking "damages for injuries or death by reason of medical, hospital, or other healing art malpractice," the complaint must include an affidavit detailing that a health professional "determined in a written report [] that there is a reasonable and meritorious cause for the filing of such action." 735 ILCS 5/2-622. The Estate alleges that the Social Workers failed to properly exercise their professional

18

duties as licensed social workers. (*See* Compl. ¶¶ 109-115, 118-124). These are claims for healing art malpractice, and therefore require an affidavit.

The term "medical, hospital or other healing art malpractice" is "construed broadly." *Jackson v. Chi. Classic Janitorial & Cleaning Serv., Inc.*, 355 Ill.App.3d 906, 823 N.E.2d 1055, 1058 (1st Dist. 2005) (internal citations and quotations omitted). It "is not confined to actions against physicians and hospitals, but rather [] may also include actions against other health professionals such as dentists or psychologists." *Bernier v. Burris*, 113 Ill.2d 219, 497 N.E.2d 763, 767 (Ill. 1986). "Healing art" includes the "entire branch of learning dealing with the restoration of [] mental health." *Lyon by Lyon v. Hasbro Indus., Inc.*, 156 Ill.App.3d 649, 509 N.E.2d 702, 706 (4th Dist. 1987).

The Complaint alleges the Center exists to "help students and staff with mental health issues," that the Social Workers undertook to treat Christensen's "mental problems" and "serious mental illness," and that they initiated and provided "medical care," "treatment," and a "treatment plan" to Christensen. (Compl. ¶¶ 15, 31-32, 40, 42-45, 78-79, 83, 95-96, 105, 118). The Complaint also acknowledges the Social Workers have specialized training and are licensed as social workers. (*Id.* ¶¶ 29, 32). Therefore, the Social Workers are providers of "healing arts." *See Jackson*, 823 N.E.2d at 1062 (holding that occupational therapists provide healing because they must have "special training" and "are required to be certified in order to practice in Illinois").

Illinois courts have established three considerations for determining if a claim alleges ordinary negligence or healing art malpractice: "(1) whether the standard of care involves procedures not within the grasp of the ordinary lay juror, (2) whether the activity is inherently one of medical judgment, and (3) the type of evidence that will be necessary to establish plaintiff's case." *Williams v. Athletico, Ltd.*, 2017 IL App. (1st) 161902, 74 N.E.3d 1047, 1054 (1st Dist.

2017) (finding a putative ordinary negligence claim against an athletic trainer was a healing art malpractice action). Here, the Estate's own allegations establish: (1) the Social Workers utilized their specialized, licensed knowledge to assess Christensen; (2) such assessments were medical judgments of Christensen's mental health as part of an alleged course of "medical care and treatment" initiated for Christensen; and (3) expert testimony, medical in nature, will be required to demonstrate the applicable standards of care. (*See* Compl. ¶¶ 15, 29-33, 40, 42-45, 78-79, 83, 95-96, 105, 118). Therefore, Counts III and IV assert healing art malpractice claims, for which the Estate has failed to file the affidavit required by 735 ILCS 5/2-622. Under the plain language of the statute, both counts must be dismissed. *See* 735 ILCS 5/2-622(g) ("The failure to file a certificate required by this Section shall be grounds for dismissal").

      **E.**      **Counts III & IV Should be Dismissed for Lack of Supplemental Jurisdiction**

Finally, should the Estate's federal claims (Counts I and II) be dismissed, the Court should dismiss the state claims (Counts III and IV) for lack of supplemental jurisdiction pursuant to 28 U.S.C. § 1367(c)(3). *See Kolbe & Kolbe Health & Welfare Benefit Plan v. Med. Coll. of Wis., Inc.*, 657 F.3d 496, 505 (7th Cir. 2011) ("[I]t is well-established that the usual practice is to dismiss without prejudice state supplemental claims whenever all federal claims have been dismissed prior to trial"). There is no reason for this Court to exercise supplemental jurisdiction over any remaining state law claims where the federal claims have been dismissed.

<u>**CONCLUSION**</u>

For the foregoing reasons, Defendants Thomas G. Miebach and Jennifer R. Maupin respectfully request this Court: (1) dismiss Counts I through IV of the Estate's Complaint at Law with prejudice; and (2) grant such other and further relief as the Court deems necessary or appropriate.

Dated: August 19, 2019                                                              Respectfully submitted,

GREENBERG TRAURIG, LLP

*/s/  Gregory E. Ostfeld*
Gregory E. Ostfeld
John F. Gibbons*
Tiffany S. Fordyce*
Thomas J. Sotos*
Scott Dorsett*
*application for admission forthcoming
77 W. Wacker Drive, Suite 3100
Chicago, IL 60601
Tel: (312) 456-8400

*Attorneys for Defendants Thomas G.
Miebach and Jennifer R. Maupin*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that **DEFENDANTS THOMAS G. MIEBACH AND JENNIFER R. MAUPIN'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS** was served via this Court's ECF system on this 19th day of August, 2019 on the following counsel of record:

James C. Pullos
Clifford Law Offices, P.C.
120 N LaSalle St., Suite 3100
Chicago, IL 60602

By:  */s/ Gregory E. Ostfeld*
Gregory E. Ostfeld