E-FILED
Tuesday, 08 October, 2019  08:15:48 AM
Clerk, U.S. District Court, ILCD

**IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION**

| | | |
|---|---|---|
| DANIEL DENEEN, AS INDEPENDENT ADMINISTRATOR OF THE ESTATE OF YINGYING ZHANG, DECEASED, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | No.: 2:19-cv-2149-CSB-JEH |
| THOMAS G. MIEBACH, JENNIFER R. MAUPIN, AND BRENDT A. CHRISTENSEN, | ) ) ) | |
| Defendants. | ) ) | |

## <u>PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO DISMISS</u>

CLIFFORD LAW OFFICES, P.C.
James C. Pullos
120 N. LaSalle St., Suite 3100
Chicago, IL 60602
(312)899-9090
jcp@cliffordlaw.com
*Attorneys for Plaintiff*

Dated: October 8, 2019

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................. i

INTRODUCTION ............................................................................................1

STATEMENT OF FACTS ................................................................................1

LEGAL STANDARD........................................................................................5

ARGUMENT ...................................................................................................6

    I.  Plaintiff Sufficiently Alleged a Section 1983 Due Process Claim Against Miebach and Maupin............................................................................................6

       A.  Plaintiff Alleged Affirmative Acts that Caused or Increased the Risk of Harm......6

       B.  Plaintiff Sufficiently Alleged Proximate Cause ....................................11

       C.  Defendants' Actions Shocked the Conscience......................................13

    II.  Defendants' Qualified Immunity Defense Should Not Be Resolved At This Stage....14

    III.  Plaintiff's State Law Claims Are Sufficient ..........................................16

       A.  Plaintiff Alleged A Duty to Warn Against Defendants ........................16

       B.  Plaintiff Sufficiently Alleged Causation .............................................20

CONCLUSION................................................................................................20

CERTIFICATE OF COMPLIANCE PURSUANT TO LOCAL RULE 7.1(B)(4)......................22

i

## **TABLE OF AUTHORITIES**

### **Cases**

*Alizadeh v. Tellabs, Inc*., No. 13 C 537, 2014 WL 2726676 (N.D. Ill. June 16, 2014) .................5

*Anderson v. Creighton*, 483 U.S. 635 (1987) .............................................................................15

*Archie v. City of Racine*, 847 F.2d 1211 (7th Cir. 1988) ............................................................6

*Armstrong v. Squadrito,* 152 F.3d 564 (7th Cir. 1998)..............................................................13

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .....................................................................................5

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) .......................................................................5

*Blue v. St. Clair Country Club*, 7 Ill.2d 359 (1954)...................................................................20

*Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687 (7th Cir. 2012) ...............................14

*Buchanan–Moore v. County of Milwaukee,* 570 F.3d 824 (7th Cir. 2009) ................................6, 7

*Cazares v. Frugoli*, No. 13 C 5626, 2017 WL 4547982 (N.D. Ill. Oct. 11, 2017) ......................10

*Collins v. City of Harker Heights, Tex.,* 503 U.S. 115 (1992).....................................................13

*DeShaney v. Winnebago County Department of Social Services*, 489 U.S. 189 (1989) ...........7, 8

*Dwares v. City of New York*, 985 F.2d 94 (2d Cir. 1993) ..................................................9, 10, 16

*Enis v. Ba-Call Bldg. Corp.*, 639 F.2d 359 (7th Cir. 1980) ...........................................................17

*Falcon v. City of Chicago*, No. 17 C 5991, 2018 WL 2716286 (N.D. Ill. June 6, 2018) ...........10

*Felty v. New Berlin Transit, Inc.*, 71 Ill.2d 126 (1978)...............................................................18

*Geinosky v. City of Chi.,* 675 F.3d 743 (7th Cir. 2012) ................................................................13

*Hammock v. Red Gold, Inc.*, 784 N.E.2d 495 (Ind. Ct. App. 2013) ..............................................12

*Harlow v. Fitzgerald*, 457 U.S. 800 (1982)................................................................................15

*Jacobs v. City of Chicago*, 215 F.3d 758 (7th Cir. 2000) ............................................................14

*King ex rel. King v. E. St. Louis Sch. Dist. 189*, 496 F.3d 812 (7th Cir. 2007) ............................14

*Kirk v. Michael Reese & Hosp. Med. Ctr.*, 117 Ill.2d 507 (1987) ................................................19

*Kneipp v. Tedder,* 95 F.3d 1199 (3d Cir. 1996)...........................................................................11

*LeBlang Motors, Ltd. v. Subaru of Am., Inc.,* 148 F.3d 680 (7th Cir. 1998) ...................................5

*Lopez v. City of New York*, 186 F. Supp. 3d 304 (S.D.N.Y. 2016)................................................10

*Lyon v. Hasbro Industries, Inc.,* 156 Ill.App.3d 649 (1987) .........................................................20

*Mann v. Vogel,* 707 F.3d 872 (7th Cir. 2013) ................................................................................13

*Nabozny v. Podlesny*, 92 F.3d 446 (7th Cir. 1996) ........................................................................15

*Ney v. Yellow Cab Co.*, 2 Ill.2d 74 (1954) .....................................................................................18

*Novak v. Rathnam*, 153 Ill. App. 3d 408 (1987) ............................................................................20

*Pena v. DePrisco*, 432 F.3d 98 (2d Cir. 2005) ..........................................................................9, 10

*Phares v. Manheim Remarketing, Inc.,* No. 114CV01190-SEB-TAB, 2016 WL 772677 (S.D. Ind. Feb. 18, 2016)........................................................................................................................12

*Reed v. City of Chicago*, No. 01 C 7865, 2002 WL 406983 (N.D. Ill. Mar. 14, 2002) ...............11

*Reed v. Gardner*, 986 F.2d 1122 (7th Cir. 1993).............................................................7, 8, 13, 16

*Ross v. United States*, 910 F.2d 1422 (7th Cir. 1990) .....................................................................6

*Stevens v. Umsted,* 131 F.3d 697 (7th Cir. 1997) ...........................................................................7

*Tarasoff v. Regents of Univ. of California*, 17 Cal. 3d 425 (1976)...........................................18, 19

*Tedrick v. Community Resource Center Inc.*, 235 Ill.2d 155 (2009)...............................................19

*Thomason v. Nachtrieb*, 888 F.2d 1202 (7th Cir. 1989) ..................................................................5

*Weiland & Chrones v. Loomis*, No. 18-2504, slip op. (7th Cir. Sep. 18, 2019) ............................16

*Whitlock v. Brueggemann*, 682 F.3d 567 (7th Cir. 2012) ...............................................................12

*Wilson v. Layne*, 526 U.S. 603 (1999) ..........................................................................................15

**<u>Statutes</u>**

405 ILCS 5/6-103(b)..................................................................................................17, 18

735 ILCS 5/2-622 .........................................................................................................20

**<u>Other Authorities</u>**

Fed. R. Civ. P. 8(a)(2) ...................................................................................................5

Black's Law Dictionary 959 (6th ed. 1990).................................................................20

## INTRODUCTION

The theory of liability in this case is not a "failure to protect;" but rather, Plaintiff is seeking redress for the increased risk of harm created by Defendants' actions. Defendants Thomas G. Miebach ("Miebach") and Jennifer R. Maupin ("Maupin")(collectively "Defendants") created a heightened risk of harm to others at the University of Illinois at Urbana-Champaign ("the University") when they took steps to treat Brendt A. Christensen ("Christensen") for his repeated homicidal ideations. Encouraged by Miebach's and Maupin's actions, Christensen took his manic homicidal thoughts to lack urgency worthy of emergency intervention. As a result of Miebach's and Maupin's actions, Miebach and Maupin created a heighted risk of danger for Christensen, who abducted and killed, Yingying Zhang ("Zhang"), a student at the University.

## STATEMENT OF FACTS

In May 2016, Christensen received his master's degree in physics from the University. Dkt. 1 at ¶ 13. Shortly after earning his master's degree, Christensen began work as a graduate teacher at the University. *Id.* at ¶ 14. During March 2017, Miebach and Maupin were employed as social workers at the University of Illinois at Urbana-Champaign Counseling Center ("UICC"), which is a clinic providing mental health care to the students and staff at the University, including Christensen. *Id.* at ¶¶ 15-16.

On March 21, 2017, Christensen visited UICC for his psychiatric complaints of homicidal ideations. *Id.* at ¶ 17. During this initial visit, Christensen reported that: he had been abusing alcohol and it was ruining his life; he had been hospitalized for mental health concerns two to three times in the past; he had intentionally injured himself within the past year; he seriously considered attempting suicide two to three times, including within the past month; and he was currently taking medications for depression and sleep issues. *Id.* at ¶ 18.

1

During this visit, Christensen stated that he was previously treated for depression and sleep issues by a psychiatrist at McKinley Health Center, which is another clinic run by the University that provides care and treatment for emotional and behavioral difficulties of the students and staff at the University. *Id.* at ¶ 19. During his initial assessment, Christensen demonstrated his symptoms were of the highest levels of severity where he apparently indicated that: he lost touch with reality; felt helpless; felt disconnected from himself; felt isolated and alone; suffered from spells of terror or panic; experienced recurring nightmares or flashbacks; experienced sadness or anger at the thoughts of his family; and wished for improved relations with his family. *Id.* at ¶ 21. Christensen similarly affirmed the highest severity for his symptoms concerning alcohol abuse. *Id.* at ¶ 22.

Christensen subsequently repeated his persistent symptoms during a recorded interview where he discussed his history of substance abuse, depression, sleep issues, marital issues, suicidal ideation, and most significantly, homicidal ideation. *Id.* at ¶ 24. Christensen recounted that his wife left him two days earlier and that he did not want to live anymore. *Id.* at ¶ 25. Significantly, Christensen further described that he developed an obsession with serial killers. *Id.* at ¶ 26. At this time, Christensen also told UICC staff he had chronically abused his depression medication prescribed by a psychiatrist at the McKinley Health Center. *Id.* at ¶ 27.

During a follow-up visit on March 30, 2017, Maupin treated Christensen and learned of Christensen's symptoms from days earlier, including suicidal ideations and his wife's recent abandonment. *Id.* at ¶ 30. During this visit, Christensen told Maupin that he agreed to continue treatment in order to "continue to evaluate his risk for harm to [himself or] others." *Id.* at ¶ 31. Acknowledging this acute problem, Maupin referred Christensen to Miebach for additional care that same day. *Id.* at ¶ 32. Miebach diagnosed Christensen with "passive suicidal ideations in

2

response to conflicts inside his marriage." *Id.* at ¶ 33. Forewarning future events, Christensen revealed that he thought about murder "in an analytical fashion," including killing a person and getting away with it. *Id.* at ¶ 34. Christensen also admitted to purchasing items that could be used in the transport and disposal of a body. *Id.* Throughout his visits at UICC, Christensen relayed specific and plausible threats of harm and potential risk of safety to others. *Id.* at ¶ 35.

Throughout his visits at UICC, Christensen identified concrete steps he had taken to abduct and kill another person. *Id.* at ¶ 37. Based on the visits at UICC, Miebach and Maupin knew that Christensen satisfied the criteria of a high-level threat of harm to others. *Id.* at ¶ 38. Miebach and Maupin knew that persons with serious mental illness are significantly more dangerous than persons in the general population particularly those who are substance abusers. *Id.* at ¶ 39. Aware of Christensen's homicidal ideations and that his position as a faculty member at the University created a specific and identifiable threat to students in Christensen's community at the University, Miebach and Maupin affirmatively initiated a treatment plan for Christensen. *Id.* at ¶ 40.

In taking these affirmative steps to address Christensen's homicidal ideations, Miebach and Maupin acted with deliberate indifference to Christensen's known risk of harm to others at the University where they allowed Christensen to remain working as a graduate teacher in good standing at the University effectively encouraging Christensen to believe that his homicidal ideations did not require immediate and long-term care. *Id.* at ¶ 41. Through taking these affirmative steps to address Christensen's homicidal ideations, Miebach and Maupin apparently ceased treatment without initiating any emergency or acute treatment options for Christensen to sufficiently safeguard the students at the University from the foreseeable threat of harm posed by Christensen, a faculty member. *Id.* at ¶ 42. Miebach's and Maupin's incomplete treatment plan

3

failed to treat Christensen's symptoms to necessary resolution. *Id.* at ¶ 43. Accordingly, Miebach and Maupin implied to Christensen that his treatment plan was satisfactorily concluded which encouraged Christensen's homicidal ideations to become exacerbated and heightened. *Id.* at ¶ 44. Though Christensen demonstrated unfitness to continue working as a graduate teacher with students, the treatment plan initiated by Miebach and Maupin did not include any intervention by the University officials, human resources, or law enforcement. *Id.* at ¶ 45. Moreover, despite this foreseeable threat of Christensen's homicidal potential toward the safety of the University's students, Miebach and Maupin acted with deliberate indifference and in a manner that shocks the conscience by discharging Christensen from their care without safely transitioning Christensen back into the University community or providing adequate safeguards for the students. *Id.* at ¶ 46.

In May 2017, following the completion of the Spring semester, the population at the University declined over seventy percent resulting in limited students and staff on campus at the University. *Id.* at ¶ 48. The University's student population remained greatly reduced throughout the two summer sessions from the middle of May through the beginning of August. *Id.* During this period of time, Zhang was a visiting international scholar from the Chinese Academy of Sciences in China who conducted research in the field of Photosynthesis and Crop Productivity in the Department of Natural Resources and Environmental Science at the University. *Id.* at ¶ 47. On June 9, 2017, Christensen abducted Zhang from the corner of Godwin and Clark on the University's campus. *Id.* at ¶¶ 49-61. The intersection of Goodwin and Clark is located approximately one-half mile from Christensen's office at the Department of Physics at the University and three miles from Christensen's home. *Id.* at ¶ 56.

It was learned that, in April 2017, Christensen visited a web forum titled "Abduction 101," which included threads discussing "perfect abduction fantasy" and "planning a kidnapping." *Id.* at ¶ 67. It was also revealed that Christensen had posed as a police officer and attempted to lure another woman into his car on June 9th – the same day Zhang went missing. *Id.* at ¶ 68. On June 29, 2017, law enforcement captured Christensen on an audio recording explaining how he kidnapped Zhang and took her to his apartment against her will. *Id.* at ¶ 70. Christensen was subsequently arrested and convicted of Zhang's abduction and murder.

## LEGAL STANDARD

To survive a motion to dismiss, the complaint's factual allegations need not be detailed but must be sufficient to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009), quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007). Under Rule 8(a)(2), a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In considering a motion to dismiss, a court must accept the well-pleaded allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *LeBlang Motors, Ltd. v. Subaru of Am., Inc.,* 148 F.3d 680, 690 (7th Cir. 1998). Accordingly, the motion should not be granted unless it appears beyond doubt that the plaintiff cannot prove any facts that would support the claim for relief. *Thomason v. Nachtrieb, 888 F.2d 1202, 1204 (7th Cir. 1989).* The court does not ask whether the plaintiff will prevail; rather, the court asks whether the plaintiff is entitled to offer evidence to support its claims. *Alizadeh v. Tellabs, Inc.,* No. 13 C 537, 2014 WL 2726676, at *3 (N.D. Ill. June 16, 2014)*(*"A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not its merits.").

## ARGUMENT

**I.    Plaintiff Sufficiently Alleged A Section 1983 Due Process Claim Against Miebach and Maupin.**

### A.    Plaintiff Alleged Affirmative Acts that Caused or Increased Risk of Harm.

In this case, Plaintiff alleges a "state created danger" against Miebach and Maupin for their actions resulting in the abduction and death of Zhang. In order to establish a "state-created danger," a plaintiff must allege state action that creates, or substantially contributes to the creation of, a danger or renders citizens more vulnerable to a danger that they otherwise would have been. *Reed v. Gardner*, 986 F.2d 1122, 1126 (7th Cir. 1993). It is well-settled that where the state acts, it must not place a person in a heighted risk of danger. *Ross v. United States*, 910 F.2d 1422, 1431 (7th Cir. 1990). "When the state puts a person in danger, the Due Process Clause requires the state to protect him to the extent of ameliorating the incremental risk." *Archie v. City of Racine*, 847 F.2d 1211, 1223 (7th Cir. 1988). "When a state cuts off sources of private aid, it must provide replacement protection." *Id.*

Defendants improperly characterize their conduct, as alleged, to constitute as merely passive omissions tantamount to a "failure to act" claim. *See, e.g.*, Def. Br. at p. 6. Defendants' characterization of Plaintiff's claim fails to apprehend the entire context of his claim. To be sure, if a state actor creates or increases the risk of harm, the state actor is required to act to mitigate this increased risk and a state actor may indeed by liable for its "failure to act" so long as he or she created the risk of harm. To allege a "state created danger," Plaintiff must allege: (1) the state by its affirmative acts must increase or create the danger faced by the plaintiff, (2) the failure to protect must be the proximate cause of the harm suffered by the plaintiff, and (3) the state's failure to protect must shock the conscience. *Buchanan–Moore v. County of Milwaukee*, 570 F.3d 824, 827-28 (7th Cir. 2009). To state a claim under this "state-created

6

danger" theory, "a plaintiff must plead facts showing some affirmative act on the part of the state that either created a danger to the plaintiff or rendered him more vulnerable to an existing danger." *Stevens v. Umsted,* 131 F.3d 697, 705 (7th Cir. 1997). Plaintiff's due process claim under the state created danger is predicated on Miebach's and Maupin's affirmative acts of creating a "state created danger" where they increased the danger posed by Christensen through their treatment of Christensen and encouragement that Christensen's homicidal ideations did not require emergency care or other needed intervention.

Although *DeShaney v. Winnebago County Department of Social Services*, 489 U.S. 189 (1989) holds that state actors are not responsible for failing to prevent private violence in the absence of a special (custodial) relationship, Plaintiff asserts that Defendants' own actions created a heighten danger and risk of harm under the "state created danger" exception to *DeShaney*. In *DeShaney*, the Court held that the Due Process Clause does not require state intervention of a physically abusive father where it concluded that "a State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause." *Id.* at 196–97. In *DeShaney*, the plaintiff Joshua DeShaney, a minor, sued the Winnebago County Department of Social Services ("DSS") for catastrophic injuries suffered as a result of his abusive father. *Id.* at 191. The Court held that although the defendant may have been aware of incidents of abuse, because no "special relationship" existed, the defendant did not have a duty to protect the plaintiff from the physical abuse of his father. *Id.* at 197-201. Here, Plaintiff alleges an exception to *DeShaney* in that Defendants Miebach and Maupin created a heightened risk of harm where they affirmatively treated Christensen in a manner that caused him to harm Zhang.

In *Reed v. Gardner*, 986 F.2d 1122 (7ᵗʰ Cir. 1993), the court held that the plaintiffs successfully stated a cause of action against three police officers for their "state created danger" where defendants arrested the original, sober driver of a car, leaving a drunk passenger behind who ultimately drove the car from the scene of the arrest and caused a head-on collision two-hours later. *Id.* at 1123. In *Reed*, the court recognized that *DeShaney* "leaves the door open for liability in situations where the state creates a dangerous situation or renders citizens more vulnerable to danger." *Id.* at 1125. The court reasoned that "[p]olice officers who remove sober drivers and leave behind drunk passengers with keys may be said to create a danger or at least render others on the road more vulnerable" because the plaintiffs were "worse off with a drunk driver heading toward them than a sober one." *Id.* The *Reed* decision ultimately supports the principle that a plaintiff is entitled to bring a cause of action against a state actor for changing the status quo in any way that heightens the risk of danger to others.

This case is similar to *Reed*. In *Reed*, the court found that liability may exist where the officers arrested a sober driver and left a drunk passenger behind with an operable car who subsequently took this car from the scene. Despite the fact that the officers in *Reed* neither made an on-scene assessment of the level of intoxication of the drunk passenger nor instructed the drunk passenger to drive from the arrest scene, the officers' interference in the normal course of events by arresting the original driver increased the risk that the intoxicated passenger would drive away from the scene of the arrest and cause harm to others. *Reed* distinguished the facts in its decision from those other non-viable cases where the "actors had no hand in creating a danger but 'stood by and did nothing when suspicious circumstances dictated a more active role for them.'" *Id.*, quoting *DeShaney*, 489 U.S. at 203. *Reed* reasoned that although the intoxicated driver ultimately caused the collision hours later, the officers' intervention into the pre-crash

8

events could not be wholly separated from the subsequent actions by the left-behind passenger who later took control of the car and caused a catastrophic accident. *Id.* at 1125.

As in *Reed*, the unique facts present in this case support a rule that state actors that initiate mental health treatment of an obviously homicidal individual are not permitted to passively stand by knowing the homicidal individual – to whom they are affirmatively providing treatment – remains a threat to the community. In this case, Miebach and Maupin affirmatively acted to resolve Christensen's homicidal tendencies, and by doing so, Miebach and Maupin injected themselves into the normal course of events. Plaintiff's allegations, which will be further developed in discovery, anticipate proving that Miebach's and Maupin's interference into the normal course of events increased the risk of harm posed by Christensen. Moreover, by encouraging Christensen to believe that his homicidal ideations were benign rather than immediate and dangerous, Miebach and Maupin facilitated affirmative acts that affected the status quo. *Pena v. DePrisco*, 432 F.3d 98, 110 (2d Cir. 2005)(distinguishing between passive failure to stop private violence and its active facilitation).

 Similarly, courts have held that state actors' conduct which encourages or emboldens private actors to engage in private violence is colorable under Section 1983. In *Dwares v. City of New York*, 985 F.2d 94 (2d Cir. 1993), the plaintiff successfully alleged a "state created danger" against police officers for encouraging harm from private actors. In *Dwares*, the plaintiff participated in a political rally in New York's Washington Square Park that involved the burning of an American flag. *Id.* at 96. During this rally, the plaintiff was assaulted by "skinheads" as a result of his participation. *Id.* The plaintiff alleged that police officers who were present at the time had indicated to the skinheads in advance that the police would not interfere with the assaults nor arrest those responsible for them. *Id.* at 96–97. The *Dwares* court

9

held that the plaintiff's allegations "went well beyond allegations that the defendant officers merely stood by and did nothing." *Id.* at 99. The court stated: "We read the *DeShaney* Court's analysis to imply that, though an allegation simply that police officers had failed to act upon reports of past violence would not implicate the victim's rights under the Due Process Clause, an allegation that the officers in some way *had assisted in creating or increasing the danger to the victim* would indeed implicate those rights." *Id.* (emphasis added).

Also, in *Lopez v. City of New York*, 186 F. Supp. 3d 304, 314 (S.D.N.Y. 2016), the court held that state actors infringed the rights of a domestic violence victim where police officers *expressly or implicitly* condoned an abusive spouse's repeated acts domestic violence because the police officers expressed or inferred to the abusive spouse that he would not be arrested, punished, or otherwise interfered with while engaging in misconduct that is likely to endanger the life, liberty or property of others. *See also Pena*, 432 F.3d at 111 (holding that to the extent that state actors participated in or condoned an officer's alcohol consumption, it could be inferred by a reasonable juror that those defendants, by their actions, implicitly but affirmatively condoned this behavior and indicated that the officer would not be disciplined for his conduct). Other courts have also recognized that deliberate silence will constitute action under the "state created danger," *i.e.*, courts have held that liability may be found "where the state plays a part in creating a danger through its policies and practices and makes the public more vulnerable to that danger through its failure to act." *Falcon v. City of Chicago*, No. 17 C 5991, 2018 WL 2716286, at *3 (N.D. Ill. June 6, 2018). *Cf. Cazares v. Frugoli*, No. 13 C 5626, 2017 WL 4547982, at *4 (N.D. Ill. Oct. 11, 2017)(court allowed state created danger claim to move forward under "code of silence" theory for the City's policies.).

Again, in this case, Plaintiff alleges that Christensen told Miebach and Maupin that he was experiencing acute homicidal ideations. By the time that Christensen visited Miebach and Maupin, he stated that he had taken affirmative steps to realizing his manifested homicidal ideations where he purchased materials to kidnap and murder. At the time that Christensen visited Miebach and Maupin, this visit should have served as a reality check of Christensen's obvious risk of harm with immediate intervention, but instead, the treatment plan initiated by Miebach and Maupin served only to condone and embolden Christensen that he will not be arrested, punished, or otherwise interfered with for carrying out his homicidal acts. Simply put, Miebach's and Maupin's treatment of Christensen encouraged Christensen to believe that his behavior was normal which triggered Christensen to effectuate his plan of abduction and murder.

### B.    Plaintiff Sufficiently Alleged Proximate Cause.

Defendants' actions were the proximate cause of Plaintiff's Due Process claim. The failure on the part of the state to protect an individual from such a danger is the proximate cause of the injury to the individual. *See, e.g., Kneipp v. Tedder*, 95 F.3d 1199, 1209 n. 22 (3d Cir. 1996)("[T]he state-created danger theory contemplates some contact such that the plaintiff was a foreseeable victim of a defendant's acts in a tort sense.") Proximate cause is a legal term representing the common sense notion that a closer causal connection should be required for liability than an act or omission being the cause in fact of an injury. *Reed v. City of Chicago*, No. 01 C 7865, 2002 WL 406983, at *3 (N.D. Ill. Mar. 14, 2002). "Causation is a standard element of tort liability, and includes two requirements: (1) the act must be the cause-in-fact of the injury, *i.e.,* 'the injury would not have occurred absent the conduct'; and (2) the act must be the 'proximate cause,' sometimes referred to as the 'legal cause,' of the injury, *i.e.,* 'the injury is of a

11

type that a reasonable person would see as a likely result of his or her conduct.'" *Whitlock v. Brueggemann*, 682 F.3d 567, 582–83 (7th Cir. 2012).

In this case, this Court should not decide the issue causation as a matter of law because causation should be decided by the trier of fact. The issue of causation in this case turns of the question of foreseeability, however, foreseeability is not formulaic and should be decided based on the facts of each case. "Determining proximate and superseding causation almost always involves a fact-intensive analysis of foreseeability which often varies on the basis of the unique circumstances and fact presented in each case." *Phares v. Manheim Remarketing, Inc.*, No. 114CV01190-SEB-TAB, 2016 WL 772677, at \*6 (S.D. Ind. Feb. 18, 2016); *see Hammock v. Red Gold, Inc.*, 784 N.E.2d 495, 500 (Ind. Ct. App. 2013)("when determining proximate cause, foreseeability is determined based on hindsight, and accounts for the circumstances that actually occurred")(internal quotes omitted).

Furthermore, Plaintiff sufficiently alleged causation in this case. Plaintiff alleged that Miebach and Maupin knew that Christensen posed a homicidal threat to others yet they facilitated Christensen's homicidal tendencies where they undertook an inadequate treatment plan without urgently responding to Christensen's acute mental health issues. To be sure, Christensen's threat of harm conveyed to Miebach and Maupin was specific and identifiable under the "state created danger" where Christensen described that he was fascinated with serial killers and purchased materials to abduct and kill a victim. Moreover, Zhang was a foreseeable victim because she was a vulnerable Chinese-scholar on the University's campus, which due to the approximately seventy percent reduction in campus population during the summer sessions, made Zhang even more vulnerable to Christensen's predations. In fact, Christensen kidnapped Zhang within one-half mile of his department at the University and within three miles of his

residence approximately two months after his treatment with Defendants. "When the police create a specific danger, they need not know who in particular will be hurt [because some] dangers are so evident, while their victims are so random, that state actors can be held accountable by any injured party." *Reed*, 986 F.2d at 1127.

Defendants' reliance on extrajudicial census data in footnote 1 of their motion to dismiss should be disregarded because this Court should not consider extrinsic evidence. A district court may consider materials outside the pleadings to the extent they are consistent with the complaint and support denying the motion to dismiss. *See Geinosky v. City of Chi.,* 675 F.3d 743, 745 n. 1 (7th Cir. 2012) (noting that "[a] plaintiff ... has much more flexibility in opposing a Rule 12(b)(6) motion and in appealing a dismissal" than her adversary does on its side of these procedural postures). However, the courts should not consider extrinsic information in order to support a motion to dismiss. *See Mann v. Vogel,* 707 F.3d 872, 877 (7th Cir. 2013)("accepting all well-pleaded facts as true, and drawing all reasonable inferences in favor of" the plaintiff). Nevertheless, contrary to Defendants' citation of the population level, Defendants erroneously fail to recognize that Zhang was targeted by Christensen during the summer sessions where the population is greatly reduced and students are easier targets of violence.

### C. Defendants' Actions Shocked the Conscience.

Defendants remarkably posit that their alleged conduct is not conscience shocking. To establish a substantive due process violation, a plaintiff must show that governmental conduct "shocks the conscience." *Collins v. City of Harker Heights, Tex.,* 503 U.S. 115, 126 (1992). Governmental conduct "shocks the conscience" when it "constitute[s] a denial of fundamental fairness, shocking to the universal sense of justice." *Armstrong v. Squadrito,* 152 F.3d 564, 570 (7th Cir. 1998). The inquiry into whether official conduct shocks the conscience in a given case is

a necessarily fact-bound inquiry. *King ex rel. King v. E. St. Louis Sch. Dist. 189*, 496 F.3d 812, 818 (7th Cir. 2007).

Plaintiff alleges "conscious shocking behavior" because Miebach and Maupin treated and encouraged Christensen, a graduate teacher at the University, to accept his acute homicidal ideations as non-emergency issues without intervention. Despite the foregoing statements by Christensen to Miebach and Maupin regarding premeditated abduction and murder without a trace forewarned Miebach and Maupin of Christensen's danger to the University community. These acts of deliberate indifference to the known risk of harm posed by Christensen support conscious shocking behavior. Moreover, because this issue is a question of fact, Miebach's and Maupin's motion to dismiss cannot be resolved at this time.

## II.   Defendants' Qualified Immunity Defense Should Not Be Resolved at This Stage.

Defendants' assertion of qualified immunity is premature and should not be considered at this time. "Rule 12(b)(6) tests whether the complaint states a claim for relief, and a plaintiff may state a claim even though there is a defense to that claim." *Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012). "The mere presence of a potential affirmative defense does not render the claim for relief invalid." *Id.* "Further, these defenses typically turn on facts not before the court at that stage in the proceedings." *Id.* A complaint is generally not dismissed under Rule 12(b)(6) on qualified immunity grounds. *Jacobs v. City of Chicago*, 215 F.3d 758, 765 n. 3 (7th Cir. 2000). Because an immunity defense usually depends on the facts of the case, dismissal at the pleading stage is inappropriate: "[T]he plaintiff is not required initially to plead factual allegations that anticipate and overcome a defense of qualified immunity." *Id.* As noted in *Jacobs*' concurrence, "Rule 12(b)(6) is a mismatch for immunity and almost always a

14

bad ground for dismissal .... and when defendants do assert immunity it is essential to consider facts in addition to those in the complaint." *Id.* at 775 (Easterbrook, J., concurring).

Qualified immunity protects government officials from civil liability when performing discretionary functions so long as "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). To overcome a defense of qualified immunity, the plaintiff must first allege the deprivation of an actual constitutional right, and second, show that the right was clearly established at the time of the alleged violation. *See Wilson v. Layne*, 526 U.S. 603, 609 (1999).

Notwithstanding Plaintiff's argument that this Court should pass on the issue of qualified immunity at this time, Plaintiff sufficiently alleged a due process claim that was clearly established at the time of Miebach's and Maupin's actions. It is well-settled, and thus a "clearly established" right under the Due Process Clause, that state actors have a duty to protect against private violence where state actors affirmatively act to increase the risk of harm by private actors. To invoke a "clearly established" right, the Court has explained that the right must be "particularized" to the extent that "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). Although the plaintiff does not need to point to a case identical to his own, he must show that, "in light of pre-existing law," a reasonable defendant would have known that his actions were unlawful. *Id.*; *Nabozny v. Podlesny*, 92 F.3d 446, 456 (7th Cir. 1996)("Under the doctrine of qualified immunity, liability is not predicated upon the existence of a prior case that is directly on point.").

In this case, the right to be free from a "state created danger" is well-settled. As discussed supra in *Reed* and *Dwares*, state actors must take care to mitigate risk of harm when their affirmative acts create a heightened danger. Specifically, where a state actor undertakes the treatment of an obviously homicidal individual and then encourages the obviously homicidal individual to believe that his ideations of abduction and murder are inconsequential, the state actor must take steps to ensure that his interference with this homicidal individual does not escalate into action. In this case, Miebach and Maupin affirmatively acted to treat Christensen and encouraged Christensen to act on his homicidal ideations. Consequently, Miebach's and Maupin's actions constitute a "state created danger" that was clearly established at the time.

Defendants' reliance on *Weiland & Chrones v. Loomis*, No. 18-2504, slip op. (7th Cir. Sep. 18, 2019) is misplaced. In *Weiland*, the court determined that the "state created danger" is inapplicable where the state actor's only conduct consisted of unshackling an inmate because no precedent has established that the Constitution requires guards to prevent escapes. *Id.* at 7. Notably, *Weiland* cites the *Reed* decision to reiterate that the guiding principle for "state created danger" is when "the state has disabled or undermined self-help or sources of private assistance." *Id.* In this case, it is clearly established that a "state created danger" exists when a state actor encourages and condones an obviously homicidal patient to manifest his homicidal tendencies onto the foreseeable victims in the University community.

## III.   Plaintiff's State Law Claims Are Sufficient.

### A.   Plaintiff Alleged A Duty to Warn Against Defendants.

Plaintiff alleges a duty of care against Defendants for their failure to warn that Christensen was acutely homicidal and posed a danger to those in the University's community, including Zhang. In this case, Plaintiff alleged that "Though Defendant Christensen

16

demonstrated unfitness to continue working as a graduate teacher with students, the treatment plan initiated by Defendants Miebach and Maupin did not include any intervention by the University officials, human resources, or law enforcement." Dkt. 1 at ¶ 45. Plaintiff further alleged that "despite this foreseeable threat of Defendant Christensen's homicidal potential toward the safety of the University's students, Defendants Miebach and Maupin acted with deliberate indifference and in a manner that shocks the conscience by discharging Defendant Christensen from their care without safely transitioning Defendant Christensen back into the University community or providing adequate safeguards for the students." *Id.* at ¶ 46. It was these acts of negligence that support Plaintiff's claims.

Simply, Plaintiff's negligence claim is due to Miebach's and Maupin's failure to warn of the danger posed to Christensen resulting in harm to Zhang. Under Section 6-103(b) of the Mental Health and Developmental Disabilities Code, 405 ILCS 5/1-100, *et seq.* ("the Code"), Miebach and Maupin were required to notify the University of Christensen's homicidal ideations and the threat he posed to the University community. Specifically, under Section 6-103(b):

> (b) There shall be no liability on the part of, and no cause of action shall arise against, any person who is a physician, clinical psychologist, or qualified examiner based upon that person's failure to warn of and protect from a recipient's threatened or actual violent behavior *except where the recipient has communicated to the person a serious threat of physical violence against a reasonably identifiable victim or victims.*

405 ILCS 5/6-103(b)(emphasis added).

Moreover, Section 6-103(c) of the Code specifically details the expectations that mental health professionals should perform in situations such as Miebach and Maupin where it states that "[a]ny duty which any person may owe to anyone other than a resident of a mental health and developmental disabilities facility shall be discharged by that person *making a reasonable effort to communicate the threat to the victim and to a law enforcement agency, or by a*

17

*reasonable effort to obtain the hospitalization of the recipient."* 405 ILCS 5/6-103(c)(emphasis added).

Section 6-103(b) of the Code creates an affirmative duty for Miebach and Maupin to report serious threats of physical violence. Liability may exist where the plaintiff demonstrates that he or she is within the class of persons to be protected and the harm must be of a kind against which the statute was intended to protect. *Enis v. Ba-Call Bldg. Corp.*, 639 F.2d 359, 361 (7th Cir. 1980). In personal injury cases where liability is grounded in a statute or ordinance violation, questions of whether a plaintiff comes within the class of persons intended to be protected by the statute or ordinance and whether the injury is of the kind generally intended to be prevented have been dealt with in terms of proximate cause and, as such, are subject to the determinations of the triers of fact. *Felty v. New Berlin Transit, Inc.*, 71 Ill.2d 126, 130 (1978). A violation of a public safety statute is prima facie evidence of negligence and such violation is actionable when there is shown to be a direct proximate causal relation between the violation and the injury. *Ney v. Yellow Cab Co.*, 2 Ill.2d 74, 78-79 (1954).

In this case, Defendants were negligent for their failure to communicate Christensen's threat to law enforcement, the University, or medical personnel. The duty imposed by Section 6-103 of the Code is similar to the duty announced by *Tarasoff v. Regents of Univ. of California*, 17 Cal. 3d 425, 442 (1976). In *Tarasoff*, the court held that a relationship of defendant therapists to either the victim or the patient will suffice to establish a duty of care. *Id.* at 435. In *Tarasoff*, the court stated that "as explained in section 315 of the Restatement Second of Torts, a duty of care may arise from either '(a) a special relation…between the actor and the third person which imposes a duty upon the actor to control the third person's conduct, or (b) a special relation…between the actor and the other which gives to the other a right of protection.'" *Id.*

18

In this case, Plaintiff has sufficiently pleaded a negligence claim for Miebach's and Maupin's failure to intervene or otherwise warn the appropriate agencies despite their awareness of the acute homicidal ideations of their own patient: Christensen. Defendants erroneously frame Plaintiff's claim as a failure to warn the victim, Zhang; however, Plaintiff does not allege that Defendants owed Zhang a duty to warn, rather, Plaintiff alleges that Miebach and Maupin owed a duty to discourage Christensen's homicidal ideations and thereafter reasonably warn law enforcement, the University, or other medical personnel of Christensen's homicidal ideations. Given the tragic outcome of Christensen's encounter with Zhang following his treatment with Miebach and Maupin, this Court should permit Plaintiff's claim to proceed. "We conclude that the public policy favoring protection of the confidential character of patient-psychotherapist communications must yield to the extent to which disclosure is essential to avert danger to others. The protective privilege ends where the public peril begins." *Tarasoff*, 17 Cal. 3d at 442.

Moreover, Defendants' reliance on *Kirk v. Michael Reese & Hosp. Med. Ctr.*, 117 Ill.2d 507 (1987) and *Tedrick v. Community Resource Center Inc.*, 235 Ill.2d 155 (2009) is misplaced. In *Kirk*, the court considered the duty a physician had to warn a patient about the effects of prescription drugs. In *Tedrick*, the court held that the defendants owed no duty to protect the plaintiff because the defendants' duty was limited to its patient, not the plaintiff. *Tedrick* did not evaluate a claim similar to the claim before this court which arises from Defendants' failure to warn law enforcement or other medical personnel.

Defendants' argument on page 15 of their brief asserting that Plaintiff cannot sustain a claim of transferred negligence should be wholly disregarded because Plaintiff's claim stems from Defendants' failure to warn appropriate law enforcement, medical professionals, and University staff rather than a claim of medical malpractice of Christensen transferred to Zhang.

19

Defendants repeat their misapprehension of Plaintiff's negligence claim in Part III.D of their motion where they attribute Plaintiff's claim as a medical malpractice claim. Assuming, *arguendo*, that Miebach and Maupin constitute those professionals within the meaning of Section 2-622, the cause of action is not a "healing arts" action. The phrase "healing art" includes "an entire branch of learning dealing with the restoration of physical or mental health." *Lyon v. Hasbro Industries, Inc.,* 156 Ill.App.3d 649, 654 (1987). "Malpractice" is defined as "[f]ailure of one rendering professional services to exercise that degree of skill and learning commonly applied under all the circumstances in the community by the average prudent reputable member of the profession with the result of injury…*to the recipient of those services*." Black's Law Dictionary 959 (6th ed.1990)(emphasis added). Here, Zhang was not a *recipient* of Miebach's and Maupin's mental health services, and thus, Section 2-622 is inapplicable to Plaintiff's claim.

### B.      Plaintiff Sufficiently Alleged Causation.

In this case, Plaintiff sufficiently alleged that Miebach's and Maupin's conduct proximately caused harm to Zhang. "Whether an act or omission is the proximate cause of an injury is generally a question for the trier of fact unless the answer is so clear that reasonable minds would agree on it unanimously." *Novak v. Rathnam*, 153 Ill. App. 3d 408, 412–13 (1987). Illinois courts have held that where an injury could be reasonably foreseen from a negligent act or omission, it is not necessary that the precise injury which occurred should have been foreseen. *Blue v. St. Clair Country Club*, 7 Ill.2d 359, 364 (1954).

In this case, Plaintiff sufficiently alleged causation; however, because causation is reserved for the trier of fact, Plaintiff's state law claims should not be dismissed.

### <u>CONCLUSION</u>

For the foregoing reasons, Defendants' motion to dismiss should be denied.

20

Respectfully submitted,

/s/ James C. Pullos
James C. Pullos

James C. Pullos
CLIFFORD LAW OFFICES, P.C.
120 N. LaSalle St., Suite 3100
Chicago, IL 60602
(312)899-9090
jcp@cliffordlaw.com
*Attorneys for Plaintiff*

Dated: October 8, 2019

**IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION**

DANIEL DENEEN, AS INDEPENDENT           )
ADMINSTRATOR OF THE ESTATE OF           )
YINGYING ZHANG, DECEASED,               )
                                        )
      Plaintiff,                        )
                                        )
      vs.                               )        No.: 2:19-cv-2149-CSB-JEH
                                        )
THOMAS G. MIEBACH, JENNIFER R. MAUPIN,)
AND BRENDT A. CHRISTENSEN,              )
                                        )
      Defendants.                       )

## CERTIFICATE OF COMPLIANCE PURSUANT TO LOCAL RULE 7.1(B)(4)

      Counsel for Plaintiff Daniel Deneen, as Independent Administrator of the Estate of Yingying Zhang, Deceased, hereby certifies that Plaintiff's Response to Defendants' Motion to Dismiss was prepared using Microsoft Word for Windows and complies with the type volume limitation as set by Local Rule 7.1(B)(4). Plaintiff's Response contains 6,401 words and 34,196 characters per the built-in character/word count of the above stated program.

Dated: October 8, 2019                           Respectfully submitted,


                                                 /s/ James C. Pullos
                                                 James C. Pullos


James C. Pullos
CLIFFORD LAW OFFICES, P.C.
120 N. LaSalle St., Suite 3100
Chicago, IL 60602
(312)899-9090
jcp@cliffordlaw.com
*Attorneys for Plaintiff*

22